CURTIS v. RIVES, Superintendent of
Washington Asylum and Jail.
No. 7872.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 1, 1941.

J. Y. E. Allen, of Washington, D. C., for appellant.

Bernard Margolius, Asst. U. S. Atty., of Washington, D. C., (Edward M. Curran, U. S. Atty., and Charles B. Murray, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice, and STEPHENS and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a final order of the District Court of the United States for the District of Columbia discharging a writ of habeas corpus, dismissing the petition upon which the writ was issued, and remanding the appellant, James Curtis, petitioner below, to the custody of the appellee Thomas M. Rives.

By an indictment returned in the District of Columbia on March 18, 1937, the appellant was charged with the crime of robbery of a drug and liquor store at 87 Florida Avenue, N. W., in the District on January 6, 1937. On March 22, 1938, after a trial by jury, he was convicted.

He moved for a new trial, which was granted, but, on January 18, 1939, after a second trial by jury, he was again found guilty as indicted. He again moved for a new trial, but this motion was on January 27, 1939, denied. Then, *in propria persona* —the appellant had previously been represented by counsel—he asked leave to file a further motion for a new trial. This leave was denied on April 19, 1939, and the appellant was on that date sentenced to imprisonment in the penitentiary for a term of from two years and two months to five years, and he is now serving this sentence. On May 19, 1939, he again *in propria persona,* filed in the District Court a document entitled "Specification of errors on appeal," together with another entitled "Notice of appeal in forma pauperis." These documents were filed in this court on May 25, 1939, under the caption "No. 7418, James Curtis, Appellant, v. United States of America." That appeal was dismissed on motion of the Government on June 19, 1939, because of the failure of the appellant to file the notice of appeal within the time required. On August 12, 1940, the appellant filed in the District Court his petition for a writ of habeas corpus. Founding the petition upon the Sixth Amendment to the Constitution,[1] he charged that in his second trial (hereafter referred to as the criminal trial) he was not confronted with the witnesses against him—naming Nathan Reiskin, proprietor of the store above mentioned, Vincent Curley, a clerk in the store, Blanche P. Greene and George Frederick Green, each of whom was named as a "witness" in the police report of the robbery—in that "the police deliberately withheld from testifying those persons personally present at the alleged robbery, named and recorded by the police . . . as 'witnesses' because they well knew . . . that those persons could not and would not identify the petitioner as having participated in the alleged robbery . . . ." The appellant charged also denial of the right to have compulsory process for obtaining witnesses in his own behalf in that "although at his request subpoenas were issued to five witnesses who would have testified, if called, that petitioner was

[1] In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witness in his favor, and to have the Assistance of Counsel for his defence.

in another city at the time of the alleged robbery, none of such subpoenas was ever served . . . ." He further charged in the petition that the judge at the criminal trial erroneously refused to receive in evidence a "police incidental." The appellant sought relief under the doctrine of Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, that loss of jurisdiction to convict and sentence a defendant may be occasioned by denial of a constitutional right during a trial.

In return and answer to the writ the appellee denied that the police had at the criminal trial withheld the named witnesses from testifying and alleged, on the contrary, that the "police incidental" bearing the names of such witnesses was known to the appellant's counsel at the time of the trial, and that the "incidental" was itself in his possession at that time; the appellee averred that he was without knowledge as to the asserted erroneous refusal of the trial judge to receive the "police incidental" in evidence, and asserted that in any event the same was hearsay and not admissible; the appellee denied the charge that subpoenas issued to witnesses in the appellant's behalf were not served, and alleged to the contrary that all of the persons to whom subpoenas were issued on the appellant's behalf were interviewed personally by the appellant's counsel prior to the criminal trial.

Upon the issues thus joined in the habeas corpus proceeding the District Court held a hearing and at the close thereof entered the order dismissing the petition and discharging the writ. This appeal was then taken. There were no findings of fact or conclusions of law in the record. We remanded the case to the District Court with instructions to make findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C. A. following section 723c, and to transmit to this court a supplemental record containing the same. This was done. The findings of fact and conclusions of law are favorable to the appellee.

■■ 1. The charged denial of the right of confrontation: In respect of this right the substance of the guaranty of the Sixth Amendment is "to secure the accused in the right to be tried, so far as facts provable by witnesses are concerned, by only such witnesses as meet him face to face at the trial, who give their testimony in his presence, and give to the accused an opportunity of cross-examination." Cf. Dowdell v. United States, 1911, 221 U.S. 325, 329-330, 31 S.Ct. 590, 55 L.Ed. 753; Mattox v. United States, 1895, 156 U.S. 237, 242, 15 S.Ct. 337, 39 L.Ed. 409. And see 5 Wigmore, Evidence (3d ed. 1940) § 1395. There is no contention by the appellant that he was not present at the criminal trial when the witnesses for the Government were called to testify; and it appears from the transcript of testimony in the case that he was present, and that his counsel did cross-examine the Government's witnesses. What the appellant really charges is not denial of the right of confrontation as such, but suppression or concealment of evidence or witnesses favorable to him. We may assume that this would be a violation of the due process clause of the Fifth Amendment. Cf. Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406.

■ This charge is refuted by the record: The transcript of the testimony in the proceedings below shows, without contradiction, that, as averred in the appellee's return and answer, the names of the witnesses above mentioned were not only known to the appellant's counsel at the time of the criminal trial, but also that the "police incidental" upon which these names were written was in the possession of such counsel at that time. Appellant's counsel at the time of the criminal trial, James J. Laughlin, so testified. Moreover, a transcript of the proceedings in the criminal trial was introduced in evidence at the hearing of the instant case, and the same has been made a part of the transcript herein. It shows that in response to a *subpoena duces tecum* issued at the instance of appellant's counsel and addressed to the Major and Superintendent of Police of the District the "police incidental" referred to was produced at the criminal trial. In addition, it was shown at the hearing of the instant case that so far as the witnesses Reiskin, Blanche P. Greene and George Frederick Green are concerned, none of them could have testified at the criminal trial to anything helpful to the defendant on the only substantial question in that trial, to wit, that of the identity of the robbers.

Jesse Abrams, a clerk in the store at the time of the robbery, testified at the habeas corpus hearing that Reiskin was not at the store during the period of the

robbery or immediately afterwards. Obviously, therefore, he could have testified to nothing at the criminal trial in respect of the identity of the participants. Blanche P. Greene herself testified in the habeas corpus hearing. It was without dispute that there were two participants in the crime, a short man and a tall man, and that the appellant Curtis was tall, "6 feet and part of an inch"—according to his own statement. Blanche P. Greene said that when she walked into the drug store a short man put a gun in her side and told her to go to the back of the store; that she did not see another man, and did not see a tall man, and that she could not recognize either of the men who were there. George Frederick Green also testified at the habeas corpus hearing that although he was in the store when the robbery occurred, he could not get a good look at the robbers; that he would not know either of them if he saw them; that he did see the tall man of the two but that he "didn't get to see him good," and did not think he would recognize him if he saw him. With respect to Vincent Curley: Ernest Thompson, a police officer of the District, who shortly after the robbery, took Curley to a Baltimore line-up in which the appellant had been placed, testified on direct examination in the habeas corpus hearing that when Curley came out from viewing the line-up "he said he did not know whether it was the man or not." On cross-examination Thompson said: "Mr. Curley came out and told me, he said, 'I don't know; I would not want to say one way or the other because I don't know; I would not trust myself.' He said, 'I am not sure one way or the other.' He said, 'I don't believe he is the man.'" It is true that there is in the record (attached to the appellant's petition for the writ of habeas corpus) a purported copy of an affidavit executed by Curley on June 19, 1940, in which he said, "I . . . have viewed the attached picture of James Curtis and believe from my recollection that he is not one of the persons who participated in a robbery of the Drug Store located at #87 Florida Ave., N. W., Washington, D. C., on January 6, 1937 about 8:30 p. m." But there was introduced in evidence in behalf of the appellee in the habeas corpus hearing a purported copy of a written statement made by Curley on July 9, 1940, to the following effect:

"Several weeks later I visited the Baltimore jail, at which time I viewed a line-up of four or five men. At that time a man, later identified to me as James Curtis, was in the line-up. At that time when I viewed the line-up I felt as though the man I later learned was James Curtis, who was in the line-up, was not the taller of the two men who engaged in the hold-up at 87 Florida Avenue, referred to above. I cannot say positively whether he was or was not the taller of the two men. Deep down in my heart I do not believe that it was the man, and I did not believe it at the time, but I had to allow myself a certain leeway for my own weaknesses, as far as remembering is concerned, in my excitement, and therefore I did not want to be positive either way. I feel now that if I saw the taller of the two men that engaged in the robbery that I would recognize him; but until such a time as I would see that man and positively put myself at ease that he was the hold-up man I would not say positively that the one known to me as James Curtis was not the man."

Curley was himself called to the witness stand in the habeas corpus hearing and confirmed the correctness of the foregoing statement; he said that he could not swear that Curtis is or is not one of the participants in the robbery "because I am not in the habit of making a definite assertion unless I am positive of it." He testified further that it was his belief that if he saw the man who placed a gun in his side at the time of the robbery, he would know him; that he had said to officer Thompson after coming out of the line-up in Baltimore that "I recognized the man in the line-up, Curtis, from the picture I had been shown, but not from the crime." Curley also testified in the habeas corpus hearing: "Q. You told the officers, after you had been in the line-up, that you could not be positive whether he was or was not the man, that you did not think so? A. I had the same feeling then as I have now. Q. Just as you corroborated by the affidavit [apparently the statement of July 9] that I read to you? A. Yes. Q. And you so advised them? Is not that correct? You told them so? A. Yes."

█ It may be arguable that, since Curley was present at the time of the robbery and saw the two participants (that he did see them is implicit in his testimony) and

was nevertheless not able to identify the appellant as one of them, this was a circumstance favorable to the appellant on the issue of identity in the criminal trial. Assuming this to be so, still the Government was not guilty of concealment or suppression of a witness or evidence in the criminal trial since Curley's name and the fact that he was at the store at the time of the robbery were known to the appellant's counsel at the time of that trial. A copy of the "police incidental" which appellant's counsel testified, as pointed out, was in his possession at the time of the criminal trial, was introduced in evidence in the habeas corpus hearing. It described: "Vincent Curley 54 M St. NW. Apt. # 205 also a clerk in above store was robbed of a black billfold containing $2.-00." If the appellant and his counsel had desired to call Curley as a witness at the criminal trial they were free to do so. And if the appellant and his counsel had desired to call the other three witnesses whom the appellant charges were concealed from him, they were in a position to do so because their names also were in this same "police incidental." Moreover, Mr. Laughlin, appellant's counsel at the criminal trial, who testified at the habeas corpus hearing that he knew of the names of the witnesses in question from the "police incidental," said also that he talked them over with the appellant and that if he did not summon them it was because he did not think it would be helpful to the appellant to do so. Mr. Laughlin testified further that in his argument to the jury in the appellant's behalf in the criminal trial he commented adversely on the failure of the Government to call the persons in question to the stand, urging, that is, that since they were not produced by the Government, the jury could infer that their testimony would have been unfavorable to the Government. Moreover, the transcript of the proceedings in the criminal trial shows that the appellant was therein given an instruction to that effect. The appellant is not entitled to have it both ways. He could not properly through his counsel argue to the jury in the criminal case that the testimony of these named witnesses must have been unfavorable to the Government and nevertheless contend in this habeas corpus proceeding that he did not know of them.

There was no reason why the Government should have called Reiskin, Miss Greene, Mr. Green and Curley in its own behalf at the criminal trial. Obviously Reiskin could have testified to nothing except possibly that money was taken from the cash register, but that was testified to by Abrams. Miss Greene and Mr. Green could have testified to the fact of the robbery, but that had been proved by Abrams and also by a witness Bowyer. Mr. Green could not identify either of the participants, and Miss Greene could not identify "the tall man." The Government in a criminal trial is not under a duty to place upon the witness stand every person who may have some knowledge of the crime which is the subject of the trial. As this court said in Williams v. United States, 1927, 57 App.D.C. 253, 254, 20 F.2d 269, 270:

"In the ordinary criminal trial, the district attorney is entitled to pursue and elaborate his theory of the case, and to exercise his own judgment as to the witnesses to be called. In determining what testimony shall be adduced, his judgment is not to be challenged or interfered with, so long as the rules of evidence and procedure are complied with, and there is nothing in either which required the district attorney in the present case to call a particular witness to testify merely because his name was indorsed upon the indictment."

We reaffirmed this in Jordon v. Bondy, 1940, 72 App.D.C. 360, 365, 114 F.2d 599, 604, where we said that:

". . . there is no violation of either letter or spirit [of the Constitution] when he [the prosecutor] merely fails to disclose evidence of which he has no knowledge or fails simply to use or disclose evidence which is only vague, inconclusive and cumulative, as was that in question here. It has been held repeatedly that the prosecution is under no obligation to call all witnesses subpoenaed by the Government, and we now hold that it is no sufficient ground for release by habeas corpus from punishment lawfully imposed that the prosecution either does not discover or does not use as witnesses or disclose the names of persons whose testimony can be only cumulatively corroborative of facts fully proven by other witnesses or evidence. . . ."

See also Sanford v. United States, 1938, 69 App.D.C. 44, 98 F.2d 325; Love v. United States, 9 Cir., 1935, 74 F.2d 988; Aycock v. United States, 9 Cir., 1932, 62 F.

2d 612, certiorari denied, 1933, 289 U.S. 734, 53 S.Ct. 595, 77 L.Ed. 1482.

■■■ 2. The charged denial of compulsory process: At the habeas corpus hearing it was asserted in the appellant's behalf by his counsel that "on December 20, 1938, in Case 59347 [the criminal trial], an affidavit was sworn to by . . . the accused, Curtis, at that time, for the summoning of witnesses from the city of Baltimore who, he maintained, would absolutely, beyond all peradventure of doubt, establish an alibi; and . . . they were not called." And again counsel for the appellant asserted: "There is no question that he did not have those witnesses that he summoned. The affidavits show that." However, the gist of the charge of denial of process apparently is not that process was not issued but that either the witnesses were not served or if served did not appear—for counsel for the appellant at the habeas corpus proceeding, in response to questions by the court, answered as follows:

"The Court. Did he name the witnesses that he wanted summoned?

"Mr. Mullen. So I understand from him.

"The Court. And the court refused to issue a subpoena?

"Mr. Mullen. No, sir; the court did that; but because of oversight or what not —he was represented by counsel—the witnesses did not appear, and the court said you could not penalize a man because of oversight of his counsel. He has not received his substantial rights."

The appellant Curtis testified in the habeas corpus proceeding: "As far as witnesses being called, I believe the Court has an affidavit signed by my sister that she never received any subpoena, and I think Mr. Jackson [Assistant District Attorney] has it or it is in the Court records."

The statements of the appellant's counsel that the witnesses sought by the appellant at the criminal trial "were not called" and that "he did not have those witnesses" and that the "witnesses did not appear" were not in the form of testimony. They are but charges and as such do not constitute evidence. As to the testimony of Curtis that the court had an affidavit of his sister that she never received a subpoena, no such affidavit appears in the record in this proceeding—and such an affidavit would be hearsay. Even if the strained assumption

be made that this statement by Curtis is susceptible of interpretation as testimony by him to the effect that he asked for process for his sister and others, and that his sister was not served, and that inferably, therefore, the others were not, this constitutes the only possible item of evidence in the record in support of the charge of denial of process. To the contrary, Mr. Laughlin, counsel for the appellant at the criminal trial, testified at the habeas corpus hearing that in July or August, 1938, Curtis asked him if he would represent him:

". . . I arranged for the trial. It is quite vivid in my memory because the order summoning witnesses for the defense at the expense of the United States was the first order signed by Judge Laws when he came on the bench. That was the first order he signed.

"Mr. Curtis told me that there would be certain witnesses in Baltimore who could prove that he was somewhere else on the night in question.

"I think there were four or five in number. One I think was Dr. O'Brien, and there was a Miss Archer. I think there were one or two others—also a taxi driver.

"I prepared a summons in accordance with the D.C.Code whereby the defendant has that right, to certify to the Court under oath that for lack of funds and to bring these witnesses here at its own expense.

"That affidavit was filed. Mr. Jackson interposed no objection. Judge Laws signed the order, and the witnesses were summoned, and we had planned for a trial in September. We set a date.

\* \* \*

"There were two or three continuances during the fall. None of the continuances were requested by the Government. They were requested by myself or Mr. Curtis because at that time I was engaged in the South on one or two cases, and then, of course, preparing this research for Judge Laws took quite some time.

"We finally arranged for trial in December. Witnesses on both sides were present, and on that morning Curtis said he did not want to go to trial, that he wanted a continuance. Mr. Jackson pointed out to Judge Laws that these witnesses were here. Judge Laws granted the continuance.

"The case came on for trial in December. Those witnesses who had been subpoenaed from Baltimore at my request were here.

"I talked to them and they told me that their testimony would be very unfavorable to Curtis, and then, acting on what I thought was best for my client, I told them to go back to Baltimore because I was afraid, maybe, if they stayed here the Government would use them and they would be unfavorable to the defendant.

"They thereafter left. When they left it was at my request because I thought I was acting in the best interests of the defendant.

"Thereafter the trial went on, and there were a number of points that came up in the trial. I can say the police incidental was subpoenaed by me. Further, before the trial came on I conferred many times with Curtis and we agreed on what witnesses would be helpful to me, and every witness called to my attention that I thought would be helpful was summoned by me."

The charge of denial of process is thus also refuted by the record.

■ 3. The charge of the appellant in the habeas corpus petition that there was error in the criminal trial in the refusal to receive in evidence the "police incidental" is not the subject of a finding of fact or conclusion of law by the trial judge in the habeas corpus hearing, and is not argued in the briefs on this appeal. And the point is not one that could be availed of in this proceeding. Allegedly erroneous rulings on questions of evidence could be considered only in an appeal from the criminal sentence itself. The writ of habeas corpus is not a substitute for such an appeal. Bowen v. Johnston, 1939, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455; Frank v. Mangum, 1915, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969; Bostic v. Rives, 1939, 71 App.D.C. 2, 107 F.2d 649, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 593, 84 L.Ed. 1011; Walsh v. Archer, 9 Cir., 1934, 73 F.2d 197; Harris v. Nixon, 1906, 27 App.D.C. 94, certiorari denied, 1906, 201 U.S. 645, 26 S.Ct. 761, 50 L.Ed. 903.

■ 4. Charges were made in the appellant's brief that he was not adequately represented in the criminal trial, and that he was denied the right of the assistance of counsel in perfecting the appeal from the judgment of conviction. Neither of these matters was within the issues in the habeas corpus hearing, and there is no finding of fact in respect of either of them. Therefore we cannot consider them. Crockett v. Johnston, 9 Cir., 1940, 109 F.2d 444, certiorari denied, 1940, 310 U.S. 626, 60 S.Ct. 975, 84 L.Ed. 1397; Dea Hong v. Nagle, 9 Cir., 1924, 300 F. 727.

The record shows no loss of jurisdiction, through denial of a constitutional right, to convict and sentence the defendant in the criminal trial. The order of the trial court in the habeas corpus proceeding was correct and is accordingly

Affirmed.