**PARTS MFG. CORPORATION v.
LYNCH et al.**

No. 350.

Circuit Court of Appeals, Second Circuit.

July 25, 1942.

Irving R. Kaufman, of New York City (Simpson, Brady, Noonan & Kaufman, Gregory F. Noonan, and David Brady, all of New York City, on the brief), for appellant.

Edward J. Behrens, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., of New York City, on the brief), for appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

This appeal is in a way a sequel to our decision in Weinberg v. United States, 2 Cir., 126 F.2d 1004. There we ordered the return of certain property illegally seized by special agents of the Federal Bureau of Investigation. Although the property involved in the appeal before us is not the identical property before us then, both cases arise from the same alleged crime and the background of the Weinberg case is necessary for an understanding of this appeal.

Criminal proceedings were pending in the District Court of the United States for the Eastern District of Michigan for alleged violations of the National Stolen Property Act, 18 U.S.C.A. § 415. That court, by an order dated December 8, 1941, designated the Director of the Federal Bureau of Investigation and his duly authorized representatives as officers of the court and directed them to seize certain automobile parts alleged to have been stolen from the Ford Motor Company in Michigan. Pursuant to this order, FBI agents, on December 11, 1941, seized certain automobile parts in the possession of Weinberg & Co. and Parts Manufacturing Corporation, appellant here, both located in New York City.

Both the Weinbergs and appellant petitioned the district court for return of the seized goods. That relief was refused. On appeal, the Weinbergs were successful. We held that the Michigan court did not have extraterritorial jurisdiction in this respect, and that in any event the court order directing the seizure did not conform to the search warrant statute. 18 U.S.C.A. §§ 611–625. In that appeal only the United States Attorney was before us. We said, however, that, since he was conducting a removal hearing connected with these alleged thefts, and because the FBI was generally an investigative arm to aid the prosecuting officials, he could properly see to it that the seized property was returned.

On March 20, 1942, nine days after our opinion in the Weinberg case, the court below ordered the return of property seized from appellant, which, though not a party in the Weinberg case, was in the same position. Before the return was made, FBI

agents gave Ford attorneys a detailed list of the property seized from appellant. Then the FBI carted the auto parts to appellant's premises. Simultaneously, a New York deputy sheriff appeared and served a writ of replevin for the same auto parts. Under this writ, issued in a suit brought by Ford against appellant, the parts were seized by the sheriff and stored in a warehouse. While the parts were in the warehouse, an Assistant United States Attorney and one Sol Rimar visited the warehouse and examined the parts. Affidavits were made by these men and others, and were presented to the district court ex parte for issuance of a search warrant. On April 13, 1942, a search warrant issued. Meanwhile appellant had given bond in the replevin action and had taken steps entitling it to repossession. On April 14, just as appellant was about to retake the goods and remove them, the search warrant was served and the goods were seized. Appellant then petitioned for the return of the goods, naming as respondents the special agent, the United States Attorney, and the United States itself. This appeal is taken from the denial of this petition by the district court.

■ Appellant's claim is that the second seizure is illegal because it was made by using information obtained in the illegal seizure. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426. The argument is that the search warrant here involved was based on the information obtained at the warehouse, and that the parts were at the warehouse only because of the replevin action, which, in turn, depended on the list of seized articles given to the Ford attorneys by the FBI. It cannot be argued that the list of articles was itself used, because the Assistant United States Attorney's affidavit denied he ever saw the list, and no attempt was made to hold a hearing to controvert his statement. The issue turns, therefore, on whether or not the chain of events—list to Ford, replevin based on the list, storage in warehouse, examination of stored parts—makes this search warrant illegal. We think not.

■ First, we said in the Weinberg case, 126 F.2d at page 1008, that the United States Attorney was not precluded from "initiating such proper steps for the lawful seizure of property in the premises as he may feel advised to take in the execution of his official duties." Just how this should have been done is succinctly stated in appellant's brief, thus: "The agents of the Government were not prevented from making an examination of the books of Ford Motor Company, or of the appellant (which were furnished to them), or of anyone else, and tracing this very property to the Parts Manufacturing Corp."

■ How far the government had gone along this suggested line is shown by the affidavits annexed to the application for the search warrant. One FBI agent swore that long before any of the seizures were made, he had made a thorough check of books and records of the Ford Motor Company and found extensive thefts of eleven different parts, particularly described. Another agent swore that prior to these seizures he had checked the books and records of three trucking companies and found that the Motor Supply Company of Detroit had shipped auto parts to appellant. The affidavit of Sol Rimar states that he was the Motor Supply Company, and that he had knowingly shipped stolen Ford parts through the trucking companies to appellant. This affidavit does not state that he told FBI agents as much prior to the first seizures, but the only reasonable inference is that the FBI also had known this prior to any of the seizures. Because of the intervening illegal seizure, appellant would apparently have the government scrap all this. Since there was nothing illegal in that work, it is absurd to require its repetition.

Second, the objection must then be that the detailed information supplied for this particular search warrant tainted it. But it is clear that starting (a) with the affidavit of an examination disclosing thefts of certain types of parts from Ford, and (b) with the affidavits of Detroit people receiving the stolen goods and shipping them to appellant, the government had reasonable cause to search for such parts. And a description of the type of parts, the style of box shipped in, etc., which could easily have been supplied without examination in the warehouse, would have been a satisfactory description to meet the requirements of the search warrant statute. United States v. Klaia, 2 Cir., 127 F.2d 529; Steele v. United States (No. 1), 267 U.S. 498, 504, 45 S.Ct. 414, 69 L.Ed. 757; Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353, certiorari denied Floratos v. United States, 305 U.S. 626, 59 S.Ct. 89, 83 L.Ed. 401; Johnson v. United States, 6 Cir., 46 F.2d 7; Rose v. United States, 8

Cir., 45 F.2d 459; United States v. Edwards, D.C.E.D.Mich., 296 F. 512; and see especially L. Hand, J., in United States v. Fitzmaurice, 2 Cir., 45 F.2d 133, 134. Actual examination of the property in the warehouse, therefore, simply confirmed what affiants already had reasonable cause to believe would be found.

Third, since the additional information obtained at the warehouse was not necessary to the validity of the search warrant, any illegality would have to rest on the single fact that the Assistant United States Attorney knew where the parts were. If we so held we would say in effect to appellant: Since the first seizure was illegal, you now have a chance to spirit away the evidence, for no search can be made until sometime after the FBI has lost track of its whereabouts. The protection of the Fourth Amendment is not to be secured by adopting the rules of hide and go seek. After all, it must be remembered that we left the door open in the Weinberg case for further steps. An attempt was made to conform to the requirements of the search warrant statute. A strong prima facie case of dealing interstate in stolen articles is presented. It is too much to hold that in order to obliterate the original illegal seizure an otherwise exemplary procedure must be thrown over because the government did not close its eyes and lose track of the stolen parts.

Affirmed.