**UNITED STATES of America,**
Appellee,

v.

**Antranik PAROUTIAN, Defendant-Appellant.**

United States Court of Appeals
Second Circuit.

Argued June 12, 1963.

Decided June 26, 1963.

Irving Younger, New York City, for defendant-appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty. for the Eastern District of New York, on the brief) for appellee.

Before MOORE, HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

This is an appeal by Antranik Paroutian from a judgment of conviction entered by the United States District Court for the Eastern District of New York, Mishler, J., after appellant was found guilty on both counts of an indictment charging separate violations of the federal narcotics statute, 21 U.S.C. § 174. He was sentenced to serve twenty years in prison on each count, the sentences to run concurrently, and to pay a fine of $20,000 on each count, or a total of $40,-000.

The present appeal is the second which Paroutian has taken to this court. The first was from a judgment of conviction had at an earlier trial upon the same two counts involved in the present case. That conviction was reversed by this court because of the introduction of illegally-seized evidence taken during two unlawful searches of Paroutian's apartment and of evidence not shown to be other than "fruit of the poisonous tree" taken during a third, lawful search. United States v. Paroutian, 299 F.2d 486 (2 Cir. 1962). It was during the third search of the apartment that federal narcotics agents broke into a cedar-lined closet, which Paroutian had installed and which one of the agents had noticed on an earlier, unlawful search, and found a secret compartment containing heroin. The facts surrounding the three searches are set forth in the opinion on the first appeal and need not be repeated here, particularly since they are not central to any of the three contentions which appellant now urges.

After this court had remanded the case to the district court for a new trial, the district judge permitted the

Government to prove that the information which led it to discover the heroin in the cedar-lined closet during the third search had a source—a special employee who acted as an informer—independent of any information obtained during the first two, unlawful searches. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920); Parts Mfg. Corp. v. Lynch, 129 F.2d 841, 143 A.L.R. 132 (2 Cir.), cert. denied, 317 U.S. 674, 63 S. Ct. 79, 87 L.Ed. 541 (1942). The district judge credited the Government's presentation and accordingly denied defendant's motion to suppress.

Appellant contends that it was error for the district court even to consider the question of the admissibility of the evidence taken during the third search because the opinion of this court on the first appeal ordered the suppression of that evidence. We disagree. The opinion of the court went no further than to hold that "the prosecution failed to show any source for its information other than the illegal search." 299 F.2d at 489. There is nothing in the opinion to suggest that this court intended to preclude the Government from proving upon retrial the existence of an independent source of information. We read the court's opinion as it was read by Judge Moore who, dissenting because he did not believe that the evidence taken during the third search was tainted, noted that "the majority concedes that this evidence can be introduced if on a new trial the government can present additional proof that the excluded evidence had an independent source." 299 F.2d at 492.

Appellant's second contention relates to the manner by which the district court permitted the Government to prove an independent origin for the information leading to the discovery of the heroin in the cedar-lined closet during the third search. The district court found that the third search was based upon "information as to the existence of the secret compartment in apartment 3F from Agent Charles G. Ward, who had been advised of its existence by a special employee by the name of Angelo Sonnesso." Since Sonnesso's statements to Ward, and Ward's statements to Pera, the agent who made all three searches, were independent of any information obtained by Pera during the earlier searches, the district judge denied defendant's motion to suppress the seized evidence.

At the first trial the Government successfully defended against the motion to suppress by arguing that the evidence taken during the third search was not tainted. It made no reference to Sonnesso or to any statements made by him, in part because it believed it could prevail without this evidence and in part because it desired to withhold Sonnesso's identity in order to protect his life. When the district court's finding was reversed on appeal, the Government at the second trial was forced to rely upon the information given it by Sonnesso in order to establish the independent source which this court said would be necessary to validate the third search. Although both Ward and Pera testified to the circumstances in which Sonnesso gave the Government his information, Sonnesso did not testify because he had disappeared and in the opinion of Ward had been murdered.

Appellant contends that it was error for the district court to allow the Government, which at the first trial had made no mention of the existence of Sonnesso, to rely at the second trial, when he was no longer available for cross-examination, upon the information which he gave. This contention is without merit. At the first trial the Government decided that there was no tactical necessity for it to rely upon the information given it by Sonnesso. Having made this decision, the Government was under no requirement either to use the information, Eberhardt v. United States, 262 F.2d 421 (9 Cir. 1958); Curtis v. Rives, 75 U.S.App.D.C. 66, 123 F.2d 936 (D.C. Cir.1941), or, in the circumstances of this case, to reveal the identity of Sonnesso. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Scher v. United States, 305 U.S. 251, 59 S.Ct.

174, 83 L.Ed. 151 (1938). The fact that in the meantime Sonnesso disappeared and hence was not available for cross-examination at the second trial did not preclude the Government from making use of the information he gave. See Dear Check Quong v. United States, 82 U.S. App.D.C. 8, 160 F.2d 251 (D.C.Cir.1947). Two Government agents testified to the receipt of the information from Sonnesso, and the defendant fully tested the credibility of these agents on cross-examination. The challenge to their credibility was for the trial judge to accept or reject—as it happened, he rejected it—and the unavailability of a possibly impeaching witness did not require automatic exclusion of the Government's offer of proof. See Higgins v. United States, 81 U.S.App.D.C. 371, 160 F.2d 222 (D.C. Cir.1946), cert. denied, 331 U.S. 822, 67 S.Ct. 1304, 91 L.Ed. 1839 (1947); compare United States v. On Lee, 201 F.2d 722 (2 Cir.), cert. denied, 345 U.S. 936, 73 S.Ct. 798, 97 L.Ed. 1364 (1953).

Finally, appellant contends that the judgment below should be reversed because of the failure of the trial judge to strike from the record, under the terms of the Jencks Act, 18 U.S.C. § 3500(d), the testimony of Luiz De Almeida, a prosecution witness, after the Government failed to produce a statement which he allegedly gave to an assistant United States Attorney and signed before trial.

When De Almeida testified on cross-examination that "I think they [associates of the assistant United States Attorney who was interrogating him] made a report of my case and I think I signed it," counsel for appellant asked for the report under § 3500, and a *voir dire* was ordered. At the hearing, De Almeida testified in tentative, uncertain terms that he thought he had signed a report, that he thought it was on yellow paper, that he thought it was typewritten, that he thought he had read it before signing it, that he did not think the agent signed it, and that he didn't remember what was in the report. The Government told the court that the files of the United States Attorney's office and of the Federal Bureau of Narcotics contained no report or statement, signed or unsigned, by De Almeida. The court then asked counsel for appellant whether he wanted to call for examination the assistant United States Attorney who had interrogated De Almeida. Counsel declined the offer, stating that he would rest on the record as it had already been made. Later, however, the Government produced the assistant United States Attorney and he testified that he did not remember taking any statement from De Almeida which he had asked him to sign.

There counsel for appellant allowed the matter to rest. He at no time moved to have De Almeida's testimony stricken from the record because of the Government's failure to produce the statement which De Almeida allegedly signed. Indeed, he did not even move for a finding that the alleged statement in fact existed or for an order that the Government deliver its file on De Almeida to the court for an *in camera* inspection. See Ogden v. United States, 303 F.2d 724, 733 (9 Cir. 1962). Having led the district court to believe that he was abandoning the issue of the producibility of De Almeida's alleged statement under § 3500, appellant can hardly be heard to press the issue here. United States v. Annunziato, 293 F.2d 373, 382 (2 Cir.), cert. denied, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961); United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487 (2 Cir.1960); see United States v. Watts, 319 F.2d 659 (2 Cir. 1963).

Affirmed.