**UNITED STATES of America,**
**v.**
**Lement HALSEY, Defendant.**
**No. 66 Cr 334.**

United States District Court
S. D. New York.
Sept. 2, 1966.

Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, for the United States, Roger J. Hawke, Asst. U. S. Atty., of counsel.

Anthony F. Marra, New York City, for defendant, Edward S. Panzer, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

Defendant is named in a two-count indictment charging narcotics violations. He has moved under Rule 41(e), Fed.R. Crim.P., to suppress evidence taken in the search of an apartment. Upon the testimony adduced at a hearing and the submissions of counsel, the court holds that the motion must be denied. The findings and conclusions resulting in this determination are as follows:

### I.

On March 10, 1966, Commissioner Bishopp issued a search warrant authorizing a search of Apartment 2F, 470 West 150th St., New York City, for "a quantity of loose heroin and bundles of heroin * * * ." In support of the warrant, Narcotic Agent Leo Thomas had made an affidavit which said:

"During Friday, March 4, 1966, I, Leo Thomas, received information that John Doe, a/k/a Lem was involved in the illicit traffic of heroin and kept a ready supply of heroin on hand in the aforementioned apartment. The source of this information stated that he had purchased heroin from Lem during the week of February 28, on several occasions and that Lem had brought him the heroin from the aforementioned apartment. On each occasion the source of this information stated he had telephoned Lem at the aforementioned apartment. I personally conducted surveillance of the aforementioned apartment on Tuesday. and Wednesday, March 8 and 9, 1966 in the early evening hours and off and on during the course of those nights. I have been an Agent of the Federal Bureau of Narcotics for the past 2 and ½ years. During the course of these surveillances I saw an unusually large number of people enter and leave apartment 2F. I recognized some of those people as being addicts. On the night of Tuesday, March 8, 1966 I approached the apartment door and was able to see through the peephole and saw assorted paraphernalia which I recognized to be used in the mixing and bagging of heroin. This included glassine envelopes, rubber bands, a sifter, measuring spoons and what appeared to be a quantity of milk sugar. Agent Hampe on the same night was able to overhear a conversation inside the apartment concerning "one half ounce." The source of my information has given information to me on several previous occasions and on each occasion that information was correct by my own personal knowledge. I have checked the ownership of the above premises and it is listed to a Gertrude Gravenburg. Agent Gruden called the telephone number for the above apartment, which was also listed under the name Gravenburg and was informed that Lem was not in and there was nothing doing until tomorrow.

"For the above reasons I believe there is now a quantity of heroin se-

creted in the above apartment by John Doe a/k/a Lem."

Before signing the warrant, the Commissioner examined Agent Thomas concerning the allegations of his affidavit.

On March 13 Agent Thomas went to the neighborhood of 470 West 150th Street and made a telephone call to the number he had for Apartment 4F. When a female voice answered, he asked for "Lem." A male voice giving that name then came over the telephone, and Thomas asked to buy three bags of heroin for $17. "Lem" agreed to make the sale, telling Thomas to await him in front of the apartment building. Instead of waiting as thus suggested, Thomas and the two agents proceeded directly into the building toward Apartment 2F. As they neared that apartment, defendant (of whom the agents had a description) opened the door carrying in his left hand three small envelopes containing a white powder that proved later to be heroin. Thomas asked defendant if his name was "Lem." When defendant said it was, Thomas produced his badge, announced his identity, and said he had a search warrant to execute. The other two agents seized defendant in the apartment doorway and Thomas took the envelopes of heroin from his left hand. Fifteen similar envelopes were taken from his pocket. The material seized from defendant's person is the subject of the first count of the indictment.

The agents then pushed their way, with defendant, into the apartment. Defendant was handcuffed and placed on a living room couch while the agents proceeded to search the apartment. One of them soon found in the dining room another glassine envelope containing heroin, which is now involved in the indictment's second count.

## II.

■ Considering only the foregoing events of March 13—the telephone call, the arrangements for a purchase from "Lem", defendant's emergence from the apartment following in expected sequence upon the telephone call, the apparent contents of his left hand at the time, the prior description the agents had, and his identification of himself as "Lem"—we conclude that the agents had ample ground for arresting defendant without a warrant. Cf. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Furthermore, the circumstances justified the search of the apartment—to which the agent had telephoned to arrange the purchase, and from which defendant was just emerging—as incidental to that lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947); Haas v. United States, 344 F.2d 56 (8th Cir. 1965); Williams v. United States, 260 F.2d 125 (8th Cir. 1958), cert. denied, 359 U.S. 918, 79 S.Ct. 596, 3 L.Ed.2d 579 (1959). These conclusions might make it unnecessary to reach defendant's contentions attacking the validity of the search warrant. But these conclusions might be wrong. Accordingly, we have reached, considered, and ultimately rejected defendant's arguments—two of which are not unsubstantial—concerning the search warrant.

■ 1. Among these points, the one requiring least discussion is the assertion that the affidavit supporting the warrant is insufficient on its face. Closely similar affidavits have been held adequate in recent and controlling precedents. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States v. Freeman, 358 F.2d 459 (2d Cir. 1966).

2. In his examination of the agent whose affidavit led to the issuance of the search warrant, defense counsel proposed to proceed by exploring generally the truth of the assertions in the affidavit. As stated by the defense, its position was that the statements in the affidavit "may or may not be true," and that a species of pleading denial by defendant was sufficient to make "a factual issue" for the hearing on every assertion

in the affidavit. A Government objection to this form of general inquiry was sustained, reserving to defendant an opportunity to demonstrate in a post-hearing memorandum that the ruling was wrong and that the hearing should be reopened to allow such an exploration. In the memorandum accordingly filed, it is again claimed, without further specificity than this, that defendant "may test and challenge the existence and veracity of the facts or grounds upon which the search warrant was granted."

■ Viewing the problem in the broad terms of defendant's submission, we reject the contention. This is not to say that there may never be occasions for trying out the truth of an affidavit on which a search warrant issues. It is only to say that there is no justification for allowing such a *de novo* trial of the issuing magistrate's determination as a routine step in every case. Until or unless the defendant has at least made some initial showing of some potential infirmities he proposes to demonstrate, the magistrate's acceptance of the affidavit as truthful should be enough.

Preliminarily, to mention the state of the authorities on this subject, it may be observed merely that they are sparse. The Supreme Court has lately noted that the question is an open one. Rugendorf v. United States, 376 U.S. 528, 531–532, 84 S.Ct. 825 (1964). A few federal decisions indicate that there should be no inquiry of the kind defendant proposed here. Kenney v. United States, 81 U.S. App.D.C. 259, 157 F.2d 442 (1946); United States v. Bowling, 351 F.2d 236, 242 n. 2 (6th Cir.), cert. denied, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1965), collecting variable citations. A few stand for the opposite view, one including a perhaps expansive dictum that the propriety of a hearing "upon the asserted falsity of the affidavit" supporting a warrant "is hardly open to question." United States v. Pearce, 275 F.2d 318, 321–322 (7th Cir. 1960); see also King v. United States, 282 F.2d 398, 400 (4th Cir. 1960); and see the very recent expression, favorable to defendant, in United States v. Freeman, supra, 358 F.2d at 463 n. 4. It is said that a majority of the states side with the former group (see King v. United States, supra, 282 F.2d at 400 n. 4), but it is noteworthy that the highest court of this State has lately enrolled in what may be the minority. People v. Alfinito, 16 N.Y.2d 181, 264 N.Y.S.2d 243, 211 N.E.2d 644 (1965), noted in 32 Brooklyn L.Rev. 423 (1966); 51 Corn.L.Q. 822 (1966); 41 Notre Dame Law. 822 (1966).

With no dispositive federal authority governing the point, it has not seemed amiss to refer back to general principles that mark at least some limiting premises for decision. To begin at the beginning, when the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing. And so, if there were nothing more to consider, it would follow that the veracity of a supporting affidavit could always be tried on a motion to suppress. But there are other, ultimately decisive things to consider. One is the question of appropriately dividing power and responsibility between the magistrate issuing a warrant and a judge later considering its legality. Closely related is the necessity—rarely controlling, but rarely immaterial—that criminal charges be reached on their merits and resolved with a decent measure of expedition. Also pertinent is an estimate of the supposed benefits in routine trials of search warrants when considered with (a) the burdens this procedure entails and (b) the risks posed by warrants issued on perjured affidavits.

■ As to the first of the suggested factors, it is important to have in mind that it is upon "judicial determinations of probable cause" by a Commissioner that federal warrants normally issue. See, e. g., Aguilar v. State of Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The Commissioner is "to assess independently" the claimed showing of probable cause that is brought before him. See Giordenello v. United States, 357 U.S. 480, 487, 78 S.Ct. 1245,

2 L.Ed.2d 1503 (1958). In making the assessment, he may (perhaps, commonly, should), as Commissioner Bishopp did in the present case, question the affiants to satisfy himself that the constitutional standard has been met. Cf. Jaben v. United States, 381 U.S. 214, 224–225, 85 S.Ct. 1365 (1965); Aguilar v. State of Texas, 378 U.S. 108, 113–115, 84 S.Ct. 1509 (1964); United States v. Ramirez, 279 F.2d 712, 716 (2d Cir.), cert. denied, 364 U.S. 850, 81 S.Ct. 95, 5 L.Ed. 2d 74 (1960).[1] For it is he, as an "independent judicial officer, whose decision, not that of the police, [will] govern whether liberty or privacy is to be invaded." Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 736 (1960). And, it is pertinent to add here, it is not the after-the-fact procedure on motions to suppress evidence which stands in this scheme as the primary bulwark for the citizen's privacy. Accordingly, if the weight and independence of the issuing magistrate's judgment is to be duly respected, and appropriately fostered, there is in this alone substantial ground for denying the claim that a district judge should routinely, whenever it is merely asked, try the question *de novo*.

It is not only because "[r]esponsibility is the great developer of men"[2]—or even because he is the real point of protection —that the Commissioner's independent judgment merits a substantial measure of finality. On a less lofty but eminently practical level, there is the fact that the work must be divided and get done. If the pressure of time and physical limitations did not exist, we might want to check on everybody's judgment; we might, for example, make a preliminary test of every indictment to be sure the grand jury had something to go on. But the mortality of men, among other things, counsels against that. Cf. Cos-

tello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397 (1956). So, too, with the notion that a trial of every search warrant should be a matter of automatic right.

■ In ruling against such a right, we strike a reasonable balance between prudence and the ideal. The question, after all, is not as to guilt or innocence, and it does not diminish the value of privacy to acknowledge this. Cf. Linkletter v. Walker, 381 U.S. 618, 637–638, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). To face pertinent facts, the issue as we have it arises only because the search proved fruitful. And while this, on familiar ground, could not validate a lawless search, United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948), it serves as at least some assurance that the price of refusing to retrace the Commissioner's steps in every case is not excessive.

■ Finally, to mark the relatively narrow dimensions of what is held here, we reemphasize that defendant's bland and sweeping claim is for a right to try the affiant in every case, with no foundation beyond the hope that some inaccuracy or falsehood may emerge. The problem may be quite different where some initial showing of some sort—some suggestion of a basis or area of doubt— is tendered. Thus, nothing said here should suggest an "incongruous * * * holding that a search warrant is beyond attack even on proof that the allegations on which it was based were perjured." People v. Alfinito, 16 N.Y.2d 181, 185, 264 N.Y.S.2d 243, 246, 211 N.E. 2d 644, 646 (1965).

■ 3. Defendant contends that the search warrant must be nullified because the supporting affidavit recounted, *inter alia*, observations by the agent made through a peephole in the apartment

---

1. Thus, defendant's counsel went on a legally and factually wrong assumption when he argued that "nobody has inquired into those facts" (the ones in the affidavit), so that an initial inquiry was properly to be made at the suppression hearing.

2. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 92, 56 S.Ct. 720, 744, 80 L.Ed. 1033 (1936) (Brandeis, J., concurring).

door. The argument is an appealing one, but it cannot prevail.

■ McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), involving a search without a warrant, is invoked by defendant but does not support his position. There, both the opinion of the Court and the concurring opinion of Mr. Justice Jackson (in which Mr. Justice Frankfurter joined) assumed explicitly, though *arguendo*, that evidence gleaned from spying very like the kind here involved could be included as part of "adequate grounds for seeking a search warrant." 335 U.S. at 455, 69 S.Ct. at 193 and see id. at 458, 69 S.Ct. 191. A similar view appears to be reflected in decisions down to date. See United States v. Conti, 361 F.2d 153 (2d Cir. 1966); United States v. Miguel, 340 F.2d 812 (2d Cir.), cert. denied 382 U.S. 859, 86 S.Ct. 116, 15 L.Ed.2d 97 (1965); United States v. Buchner, 164 F.Supp. 836 (D.D.C.), aff'd, 268 F.2d 891 (D.C. Cir. 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 573 (1959). Indeed, the law has sanctioned even for proof of guilt the use of evidence obtained through methods denounced by weighty voices as "ignoble" assaults on privacy. On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322 (1942); United States v. Pardo-Bolland, 348 F.2d 316 (2d Cir.), cert. denied, 382 U.S. 944, 86 S.Ct. 388, 15 L.Ed.2d 353 (1965). Apart from the fact that the evidence required to support a search warrant is evaluated by less stringent standards, United States v. Ventresca, 380 U.S. 102, 107–108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), defendant has gone far beyond accepted learning in his attack upon the peephole scrutiny involved here.

This does not necessarily mean, though it once may have, that evidence obtained by any invasion of privacy may be utilized so long as the invasion stops short of a technical trespass. See Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). There are non-trespassory intrusions so offensive to privacy and human dignity that they may well cross constitutional bounds, whether designed to procure evidence for a search warrant or for any other purpose. See Britt v. Superior Court of Santa Clara County, 58 Cal.2d 469, 24 Cal.Rptr. 849, 374 P.2d 817 (1962); Bielicki v. Superior Court of Los Angeles County, 57 Cal.2d 602, 21 Cal.Rptr. 552, 371 P.2d 288 (1962). But see Smayda v. United States, 352 F.2d 251 (9th Cir. 1965), cert. denied 382 U.S. 981, 86 S.Ct. 555, 15 L.Ed.2d 471 (1966). See also Westin, Science, Privacy, and Freedom: Issues and Proposals for the 1970's, 66 Colum. L.Rev. 1003 (1966). Similarly, there may be entries which, while amounting to technical trespasses, do "not impinge upon some area protected by the Fourth Amendment." United States v. Conti, supra, 361 F.2d at 157. And it may make a difference whether the means of surveillance is one the victim can know and guard against—for example, the apartment peephole—or one surreptitiously created by the official spy. See People v. Regalado, 193 Cal.App.2d 437, 14 Cal. Rptr. 217 (Dist.Ct.App.1961), vacated and remanded, 374 U.S. 497, 83 S.Ct. 1875, 10 L.Ed.2d 1044 (1963), rev'd, 224 Cal.App.2d 586, 36 Cal.Rptr. 795 (1964).

■ In any event, whatever extensions of privacy the future may bring, the agent's observations through the peephole in this case "did not vitiate the surveillance evidence tending to establish probable cause." United States v. Conti, supra, 361 F.2d at 157.[3]

The motion to suppress is denied. It is so ordered.

3. The Government contends that the affidavit was sufficient even excluding the peephole observations. The argument is sound, and supplies an alternative answer to defendant's contentions on this subject. Cf. United States v. Paroutian, 319 F.2d 661 (2d Cir. 1963), cert. denied, 375 U.S. 981, 84 S.Ct. 494, 11 L.Ed.2d 426 (1964); Parts Mfg. Corporation v. Lynch, 129 F. 2d 841, 843, 143 A.L.R. 132 (2d Cir.), cert. denied, 317 U.S. 674, 63 S.Ct. 79, 87 L.Ed. 541 (1942).