**UNITED STATES of America,**
**Appellee,**

v.

**Marcelo Jose SUAREZ, Appellant.**

**No. 505, Docket 30883.**

United States Court of Appeals
Second Circuit.

Argued June 14, 1967.

Decided July 12, 1967.

714

Joseph I. Stone, New York City (Stone & Diller, New York City, on the brief), for appellant.

Elkan Abramowitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and McLEAN, District Judge.*

FEINBERG, Circuit Judge:

Marcelo Jose Suarez appeals from a conviction under 21 U.S.C. §§ 173, 174 after a three-day non-jury trial in the Southern District of New York before Judge Palmieri. Narcotics found by Government agents in a search of appellant's apartment constituted key evidence in the case against him. On appeal, Suarez argues that the warrant authorizing that search was issued without probable cause, that the warrant was executed improperly, and that he was entrapped. We find each of these contentions without merit, and affirm the conviction.

The relevant facts on the first issue are as follows: Suarez was indicted in June 1966. Shortly thereafter, he moved under Fed.R.Crim.P. 41(e) to suppress "all narcotic drugs" seized in his apartment on May 16, 1966. The motion papers attacked the manner of entry, to be discussed below, and also stated that "after discussing this case with my attorney, I feel that this warrant was not effective under the principles established in Aguilar v. [State of] Texas, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed. 723] [(1964)]." The record indicates that all concerned at the time regarded the latter ground of the motion as an attack on the sufficiency of the affidavit, while the former—alleging improper execution of the warrant—required a factual determination. This was, indeed, a reasonable construction of the vague argument in the motion papers made only by the reference to *Aguilar*, since that case discussed in detail what an affidavit in support of a warrant must contain to satisfy the probable cause requirement of the Fourth Amendment. The motion to suppress was argued before Judge Murphy in July; according to the record, he denied it, but referred the factual question of how the warrant was executed to the trial judge.

Examining for its sufficiency the affidavit in support of the warrant, as Judge Murphy did, it is clear no error was committed in denying the motion to suppress on that ground. The affidavit of agent John A. Frost states, in part, the following:

A reliable informant who has provided information on at least 100 occasions over the past 1½ years, which information has proven extremely reliable and accurate, has informed your deponent that he was actually present in Apartment 2D at 138 Norfolk Street, New York, N. Y., on May 15,

---

* Of the Southern District of New York, sitting by designation.

1966, and observed a quantity of heroin believed to be about one-half kilogram of heroin. The informant has also stated that the apartment is being used by one Jose Suarez and that Suarez is selling half ounces and ounces of heroin from the apartment.

Your deponent has observed a person identified as Jose Suarez enter the premises at 138 Norfolk Street, New York, N. Y., on a number of occasions. In addition, the building, 138 Norfolk Street, New York, N. Y., is presently being renovated and only two apartments are occupied in the building. Surveillance conducted by your deponent over a period of time indicates a heavy traffic in and out of the building.

Because the source of information has given correct information to me on so many prior occasions, and because of the surveillance conducted by your deponent, I believe that there is now a quantity of heroin being secreted in the above apartment by Jose Suarez.

Reliance on an informant to obtain a warrant is not *per se* improper; indeed, it is the usual practice given the facts of criminal life. The test set forth in *Aguilar* is that

the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528 [84 S.Ct. 825, 11 L.Ed.2d 887], was "credible" or his information "reliable." [378 U.S. at 114, 84 S.Ct. at 1514, footnote omitted.]

In this case Commissioner Earle N. Bishopp was told that the informant actually saw heroin in a specified apartment used by Suarez, that the informant had provided extremely accurate information "on at least 100 occasions," that the building, though with but two occupied apartments, had heavy traffic, and that Suarez entered the premises on a number of occasions. We conclude that the command of *Aguilar* was amply met here; issuance of the warrant by the Commissioner on the strength of the affidavit was clearly on probable cause. See also Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); United States v. Freeman, 358 F.2d 459 (2d Cir.), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966).

We do not understand appellant seriously to dispute this conclusion, reached first by Judge Murphy and now by us. In his brief, he presses instead the more subtle point that

a supporting affidavit for a search warrant, apparently regular on its face, must be evaluated in light of the facts actually adduced upon trial.

What appellant suggests, of course, is that the affidavit here should have been re-evaluated at trial, having already been examined for sufficiency both by the Commissioner and Judge Murphy. Carrying this argument further, appellant asserts that at the trial before Judge Palmieri, he proved that some of the inferences in the affidavit were untrue, e. g., that the "heavy traffic" in the building was not due to narcotics but rather to building repairs, and could have demonstrated the unreliability of the informer had he been allowed to. As to the latter contention, we note that the informer was produced as a defense witness and that the trial judge gave appellant considerable leeway to examine him at length.

When, if ever, and to what extent a defendant can test the truth of assertions in an affidavit submitted to obtain a search warrant are difficult questions. They were specifically held open in Rugendorf v. United States, 376 U.S. at 531–532, 84 S.Ct. 825, 11 L.Ed.2d 887, and have not been explicitly decided or fully discussed by this court. See United States v. Freeman, 358 F.2d at 463 n. 4 (dictum). The issues and the state of the authorities were fully

discussed in United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1966), which was affirmed in open court by this panel.[1] However, that affirmance has no precedential value on these issues because they were not involved in one of the two counts in the indictment on which Halsey was convicted and given concurrent sentences. United States v. Gordon, 379 F.2d 788 (2d Cir. 1967).[2]

■ As in *Halsey*, we need not wrestle with these basic questions here. Judge Murphy was apparently not asked to hold such a hearing on the argument of the motion to suppress; even if he had been, and assuming arguendo a hearing would be proper, it was well within his discretion not to hold one on the papers before him, since they did not raise these issues. Judge Palmieri refused at trial to allow relitigation of whether there was probable cause; again this was no abuse of discretion. Cf. United States v. Conti, 361 F.2d 153, 158 (2d Cir. 1966); United States v. Watts, 319 F.2d 659 (2d Cir. 1963). It may be that testimony at trial could so clearly demolish statements in an affidavit supporting a warrant, that a prior denial of a motion to suppress would be overruled. But the evidence adduced by the defense here fell far short of that. There is no need, therefore, to consider further appellant's claim that the warrant issued on insufficient cause.

■ Appellant's second point concerns the execution of the warrant. He claims that the agents did not stop to announce themselves as required under 18 U.S.C. § 3109, which provides that:

The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

However, the testimony of Agents Frost and Hogan was that they approached appellant's apartment door and found it partially open and that appellant's common-law wife appeared in response to their knock. Frost exhibited his badge and told her that he was "a federal narcotic agent and had a search warrant for the apartment." It is true that defendant offered contradictory testimony; e. g., his wife stated that she heard no knock and no statement "that they had a search warrant." However, the trier of fact was free to believe the agents.

■ Finally, appellant urges that his defense of entrapment should have been sustained. Suarez testified that he was released from jail on a narcotics offense in December 1965, and that from that time until his arrest in May 1966, the informer gave Suarez narcotics to hold for him and paid Suarez with money and drugs. However, the informer, who was called as a defense witness, denied this, and Judge Palmieri found appellant's testimony not "worthy of belief." In appraising credibility, the judge specifically referred to Suarez's prior narcotics convictions, and the presence in his room of such tools of the narcotics trade as adulterants, bagging material, and a loaded revolver. It is true that the informer may have had reason to lie on the witness stand; but this was argued to the judge and under familiar doctrine credibility issues are best resolved by the trier and not disturbed by us. See, e. g., United States v. Smalls, 363 F.2d 417 (2d Cir. 1966), cert. denied, 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967). Counsel made an effective contrast below between the treatment accorded Suarez, an addict with "a $50

1. United States v. Halsey, Docket No. 31369, June 12, 1967.

2. The Government also relies on United States v. Williams, 379 F.2d 319 (2d Cir. 1967). However, the conviction there was affirmed without opinion, and there were no opinions dealing with this point by the two district judges who denied an evidentiary hearing.

to $75 a day" habit, and the informer, not similarly afflicted, and, as the judge put it, "certainly not a paragon of civic virtue"; the former goes to jail under a mandatory minimum ten-year sentence while the latter remains free. There are indeed disquieting aspects in the use of informers, in addition to normal distaste for spies. Critics have charged that most narcotics cases involve "horizontal cooperation"—between "sidewalk level" addicts and peddlers—instead of a "vertical reaching upwards into meaningful levels of crime,"[3] and that the pressure on informers to "make" cases or go to jail destroys their reliability.[4] But the opposing considerations are weighty. A rule prohibiting the use of informers or belief of their testimony "would * * * severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest. A prime example is provided by the narcotics traffic." Lewis v. United States, 385 U.S. 206, 210, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). (Footnote omitted.) The disparity of treatment accorded Suarez and the informer by society is tremendous. However, the remedy, if one is called for, does not lie with us.

Accordingly, the judgment of conviction is affirmed.

HAYS, Circuit Judge (concurring in the result):

I agree with the conclusions of the majority but I do not accept their statement of the ground for our affirmance of the district court's decision in United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1966).

---

3. Remarks of Bernard Moldow at panel discussion of 2d Circuit Judicial Conference, reported as The Problem of Adequate Representation of Indigent and Other Defendants in Criminal Cases, 36 F.R.D. 129, 149 (1964).

4. See Donnelly, Judicial Control of Informants, Spies, Stool Pigeons, and Agent Provocateurs, 60 Yale L.J. 1091, 1121 (1951); Note, Informers in Federal Narcotics Prosecutions, 2 Colum.J. of Law & Social Problems 47, 48–49 (1966). See generally id.