**UNITED STATES of America**

v.

**Charles J. THORNTON, Appellant.**

No. 23017.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 20, 1970.

Decided Oct. 21, 1971.

As Amended Oct. 26, 1971.

958

Mr. John A. Shorter, Jr., Washington, D. C., for appellant.

Mr. James L. Lyons, Asst. U..S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before TAMM and ROBINSON, Circuit Judges, and MATTHEWS,* Senior District Judge, United States District Court for the District of Columbia.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant was convicted on a federal narcotic charge stemming from his possession of 20 capsules containing heroin.[1] The capsules were found in an envelope removed from his shirt pocket during a search incidental to his arrest[2] on a warrant charging another violation of the federal narcotic laws.[3] The arrest warrant had been issued by a United States Commissioner on the basis of an affidavit by Walter S. Fialkewicz, a special agent of the Bureau of Narcotics

and Dangerous Drugs.[4] The affidavit, appendicized to this opinion, detailed information derived partly from an unnamed informant and partly from the agent's own experiences.

At the onset of trial, the court conducted a hearing on a defense motion to suppress the evidence pertaining to the discovery of the capsules on the ground that the arrest warrant had issued for insufficient cause. At that hearing, appellant's counsel sought but was denied leave to examine Agent Fialkewicz in an effort to elicit testimony as to the informant's previous reliability.[5] The sole contention on this appeal is that the trial judge erred in denying that request. We affirm in the view that whatever an accused's entitlement to such a probe might be under different circumstances, it did not exist under those obtaining here.

I

In undertaking an exhibition of probable cause for appellant's arrest, Agent Fialkewicz comprehensively alleged in his affidavit the facts on which he counted. Those allegations we may profitably summarize. A confidential informant, "whose information has proven to be reliable in the past," [6] told two agents that Robert D. "Bobby" Long and our appellant, Charles J. "Boo" Thornton, were peddling narcotics from a designated room in a designated building. Orders could be placed by calling a certain telephone number and asking for either

---

* Sitting by designation pursuant to 28 U.S.C. § 294(c) (1964).

1. The conviction rested on 26 U.S.C. § 4704 (a) (1964). Appellant was found not guilty on another count charging a violation of 21 U.S.C. § 174 (1964). That § 4704(a) has since been repealed, 84 Stat. 1291, 1292 (1970), does not affect the conviction. 84 Stat. 1294 (1970). The sentence was to a term of imprisonment for 12 years, resting partly upon prior conviction for other narcotic offenses.

2. No issue as to the scope of the search has been raised.

3. The events leading to the warrant were kept from the jury, which was appropriately instructed not to speculate as to why appellant had been arrested.

4. Apparently, the affidavit was prepared with a view to execution by Agent Gary G. Worden as well as Agent Fialkewicz, but only the latter executed it. There is nothing in the record to indicate that the Commissioner examined Agent Fialkewicz or acted otherwise than on the basis of the allegations contained in the affidavit.

5. At the hearing it developed that the informant was not available.

6. See text infra at note 33.

"Bobby" or "Boo," who would then arrange for and make delivery on the street. Agent Fialkewicz dialed the number and, getting an answer, handed the telephone to the informant who asked for "Bobby." He was told that "Bobby" was out and that he was speaking to "Boo." The informant ordered 25 "things," and was instructed to wait for "Bobby" on a nearby street corner.[7]

A search of the informant had demonstrated that he possessed no drugs or money, and he had been furnished funds with which to consummate the purchase. As Agent Fialkewicz watched, "Bobby" Long emerged from the building and at the appointed street corner met the informant, who met or spoke to no one en route. There what appeared to be an exchange was made, after which Long left and reentered the building. Another search of the informant disclosed that he then had no money but instead had 25 capsules in which there was a white powder containing a later-identified opium derivative. The informant stated that he bought the capsules from Long with the money advanced, and positively identified both Long and appellant from police photographs. Each had a previous federal narcotic conviction; each was "well known to the affiants[8] as being involved in the illicit narcotic traffic in this area," and "well known by members of the MPD Narcotic Squad."[9]

The detail of the affidavit does not obscure the fact that probable cause for believing that appellant participated in the drug sale Agent Fialkewicz witnessed had to rest heavily upon the informant's word. Much, then, depended Long's partner in the illicit scheme, and that appellant was the party with whom

the observed sale had been telephonically arranged. The agent never saw appellant during the course of the events the affidavit described, nor is it clear that he heard the other end of the informant's telephone conversation producing the sale.[10] In sum, the only nexus between appellant and the drug transaction in question was that supplied by the informant's word. Much, then, defended on the informant's reliability, and our task is to determine whether appellant should have been permitted to interrogate Agent Fialkewicz in that regard.

We approach that task, as we must, step by step. In Part II of this opinion, we identify the legal principles forming the backdrop for consideration of appellant's request. In Part III, we analyze the situation portrayed by the affidavit in order to isolate the informant's role in the magistrate's determination of probable cause. In Part IV, viewing the trial judge's ruling in the perspective thus gained, we find insufficient reason to upset it.

## II

"The right of the people to be secure in their persons, . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." These are inexorable commands of the Fourth Amendment, and they subserve fundamental objectives. "[T]he informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . who may happen to make arrests."[11] The probable cause require-

---

7. It is unclear from the affidavit as to how much, if any, of the other end of the conversation Agent Fialkewicz heard. This circumstance does not, however, affect our ultimate conclusion.

8. See note 4, *supra*.

9. See text *infra* at note 32.

10. See note 7, *supra*.

11. United States v. Lefkowitz, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877 (1932). See also United States v. Ventresca, 380 U.S. 102, 110, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Aguilar v. Texas, 378 U.S. 108, 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Jones v. United

ment—applicable to arrests as well as searches [12]—is a shield against despotic utilization of governmental power. The Warrant Clause assures that the factual inferences undergirding a warrant "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." [13]

Here Agent Fialkewicz pursued the commendable course of an arrest upon rather than without a warrant. As probable cause for appellant's arrest, he made oath to the informant's disclosures and to his own observations as well. The Commissioner to whom he made application issued the warrant, an action in which a finding of probable cause is implicit. Appellant does not contend, nor hardly could he, that probable cause for the arrest did not appear if the informant could be believed.[14] It is the reliability of the informant's story, and not its efficacy if trustworthy, that appellant wished to explore with the agent at the suppression hearing.

 That the information upon which, in whole or in part, a warrant issues is hearsay to the officer-affiant, as distinguished from facts personally known to him, does not ipso facto negate the existence of probable cause.[15] If a "substantial basis for crediting the hearsay is presented," that constitutional mandate is met.[16] It is not enough, however, that the affiant himself is satisfied that the information and its source are credible.[17] As we have said, it is for the magistrate from whom the warrant is sought, and not the officer seeking it, to determine whether there is probable cause to issue it.[18]

States, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

12. *E. g.*, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). See also note 13, *infra*.

13. Johnson v. United States, *supra* note 11, 333 U.S. at 14, 68 S.Ct. at 369. See also United States v. Ventresca, *supra* note 11, 380 U.S. at 109, 85 S.Ct. 74 ; Aguilar v. Texas, *supra* note 11, 378 U.S. at 115, 84 S.Ct. 1509 ; Giordenello v. United States, 357 U.S. 480, 486, 78 S.Ct. 1245, 2 L.Ed. 2d 1503 (1958). The Warrant Clause applies to arrest as well as search warrants. Beck v. Ohio, 379 U.S. 89, 96 n. 6, 85 S. Ct. 223, 13 L.Ed.2d 142 (1964) ; Giordenello v. United States, *supra*, 357 U.S. at 485–486, 78 S.Ct. 1245.

14. Compare United States v. Harris, 403 U.S. 573, 575–576, 91 S.Ct. 2075, 29 L. Ed.2d 723 (1971) ; United States v. Ventresca, *supra* note 11, 380 U.S. at 112–116, 85 S.Ct. 741 ; Rugendorf v. United States, 376 U.S. 528, 529–531, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964) ; Jones v. United States, *supra* note 11, 362 U.S. at 267–268 n. 2, 80 S.Ct. 725. See also Jaben v. United States, 381 U.S. 214, 221–222, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965).

15. Spinelli v. United States, 393 U.S. 410, 412, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ; United States v. Ventresca, *supra* note 11, 380 U.S. at 108, 85 S.Ct. 741 ; Aguilar v. Texas,, *supra* note 11, 378 U.S. at 114, 84 S.Ct. 1509 ; Rugendorf v. United States,, *supra* note 14, 376 U.S. at 533, 84 S.Ct. 825 ; Jones v. United States, *supra* note 11, 362 U.S. at 270–271, 272, 80 S.Ct. 725.

16. Jones v. United States, *supra* note 11, 362 U.S. at 269, 80 S.Ct. at 735. See also United States v. Ventresca, *supra* note 11, 380 U.S. at 110, 85 S.Ct. 110 ; Aguilar v. Texas, *supra* note 11, 378 U.S. at 114, 84 S.Ct. 1509 ; Rugendorf v. United States, *supra* note 14, 376 U.S. at 533, 84 S.Ct. 825. And see Draper v. United States, *supra* note 12, 358 U.S. at 312, 79 S.Ct. 329 (arrest without a warrant).

17. *E. g.*, Aguilar v. Texas, *supra* note 11, 378 U.S. at 109, 84 S.Ct. at 1511 (affidavit that police officers had "received reliable information from a credible person and do believe that" contraband was stored in described premises) ; Nathanson v. United States, 290 U.S. 41, 44, 54 S. Ct. 11, 78 L.Ed. 159 (1933) (affidavit that affiant "has cause to suspect and does believe" that contraband was at specified location). See also Giordenello v. United States, *supra* note 13, 357 U.S. at 481, 78 S.Ct. 1245.

18. Text *supra* at note 13.

In order that the magistrate may intelligently make that determination, it is necessary that he be given the facts. For just to the extent that the magistrate is presented with conclusions instead of facts, it is the officer rather than the magistrate who makes the appraisal. And where probable cause in some wise depends upon the acceptability of hearsay, facts bearing on the reliability of the information and its source become very relevant. The magistrate must be sufficiently advised to make possible a valid judgment that more likely than not the informant is to be trusted and knew what he was talking about.[19]

So it is that an affidavit for a warrant must set forth "some of the underlying circumstances from which the informant concluded" that there was a legal violation "and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.' "[20] To provide probable cause, the affidavit must authorize a supportable "inference that the informer was generally trustworthy and that he made his charge against [the suspect] on the basis of information obtained in a reliable way."[21] "Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police."[22] For "[t]he purpose of the [affidavit] . . . is to enable the appropriate magistrate to determine whether the 'probable cause' required to support a warrant exists. [He] must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion."[23] And only through scrupulous observance of these requirements can the mandates of the Fourth Amendment be honored.[24]

19. Spinelli v. United States, *supra* note 15, 393 U.S. at 416, 89 S.Ct. 584; Aguilar v. Texas, *supra* note 11, 378 U.S. at 114, 84 S.Ct. 1509; United States v. Long, 142 U.S.App.D.C. 118, 120, 439 F.2d 628, 630 (1971).

20. Aguilar v. Texas, *supra* note 11, 378 U.S. at 114, 84 S.Ct. at 1514. See also Spinelli v. United States, *supra* note 15, 393 U.S. at 416, 89 S.Ct. 584; McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); United States v. Ventresca, *supra* note 11, 380 U.S. at 108–109, 85 S.Ct. 741; Jones v. United States, *supra* note 11, 362 U.S. at 269, 80 S.Ct. 725; Nathanson v. United States, *supra* note 17, 290 U.S. at 47, 54 S.Ct. 11; (Clarence) Jones v. United States, 122 U.S.App.D.C. 370, 371, 353 F.2d 908, 909 (1965).

21. Spinelli v. United States, *supra* note 15, 393 U.S. at 417, 89 S.Ct. at 589. And see Kleinbart v. United States, 142 U.S.App. D.C. 1, 3, 439 F.2d 511, 513 (1970), where, on a motion to suppress evidence seized upon a suspect's warrantless arrest, we held that both of these elements were satisfactorily shown testimonially.

22. United States v. Ventresca, *supra* note 11, 380 U.S. at 109, 85 S.Ct. at 746. See also Jaben v. United States, *supra* note 14, 381 U.S. at 244, 85 S.Ct. 1365. "[E]nough information [must] be pre-sented to the [magistrate] to enable him to make the judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." Jaben v. United States, *supra* note 14, 381 U.S. at 224–225, 85 S.Ct. at 1371. See also Whiteley v. Warden, 401 U.S. 560, 564, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

23. Giordenello v. United States, *supra* note 13, 357 U.S. at 486, 78 S.Ct. at 1250. See also Aguilar v. Texas, *supra* note 11, 378 U.S. at 113, 84 S.Ct. 1509, 1513. So, in United States v. Long, *supra* note 19, 142 U.S.App.D.C. at 120, 439 F.2d at 630, we held that an affidavit merely reciting that an informant had "personal knowledge" of a bookmaking operation, without furnishing any of the circumstances upon which that conclusion was based, was insufficient to establish probable cause.

24. See Whiteley v. Warden, *supra* note 22, 401 U.S. at 564, 91 S.Ct. 1031; Spinelli v. United States, *supra* note 15, 393 U.S. at 415, 89 S.Ct. 584; Jaben v. United States, *supra* note 14, 381 U.S. at 224, 85 S.Ct. 1365; Aguilar v. Texas, *supra* note 11, 378 U.S. at 112–113, 84 S.Ct. 1509, 12 L.Ed.2d 723; Giordenello v. United States, *supra* note 13, 357 U.S. at 486, 78 S.Ct. 1245; Johnson v. United States, *supra* note 11, 333 U.S. at 13–14, 68 S.Ct. 367, 92 L.Ed. 436.

Such, then, is the magistrate's function, to be performed upon a construction of the affidavit "in a commonsense and realistic fashion." [25] Thereafter the magistrate's "determination of probable cause should be paid great deference by reviewing courts," [26] and sustained when "there was substantial basis for him to conclude" as he did.[27] And "when a search is based upon a magistrate's, rather than a police officer's determination of probable cause, the reviewing courts will accept evidence of a less 'judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant.' " [28] For "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." [29] "[W]here [the underlying] circum-

stances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the court should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." [30]

### III

Tested by governing constitutional criteria, the affidavit in suit was facially sufficient to adequately support the warrant for appellant's arrest. We reach this conclusion even assuming that no weight should be assigned to two of its purely conclusory allegations.[31] One is the unexplained assertion that appellant was "well known . . . as being involved in the illicit narcotic traffic in this area," and was "well known by" local police.[32] The other is the

25. United States v. Ventresca, *supra* note 11, 380 U.S. at 108, 85 S.Ct. at 746, 13 L.Ed.2d 684. For "[t]hey are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id.* See also Spinelli v. United States, *supra* note 15, 393 U.S. at 415, 419, 89 S.Ct. 584.

26. Spinelli v. United States, *supra* note 15, 393 U.S. at 419, 89 S.Ct. 584. See also Jones v. United States, *supra* note 11, 362 U.S. at 270–271, 80 S.Ct. 725, 4 L.Ed. 2d 697. But "[a]lthough the reviewing court will pay substantial deference to judicial determinations of probable cause, the court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely, as a rubber stamp for the police." Aguilar v. Texas, *supra* note 11, 378 U.S. at 111, 84 S.Ct. at 1512.

27. Jones v. United States, *supra* note 11, 362 U.S. at 271, 80 S.Ct. at 736. See also Aguilar v. Texas, *supra* note 11, 378 U.S. at 111, 84 S.Ct. 1509; Johnson v. United States, *supra* note 11, 333 U.S. at 13–14, 68 S.Ct. 367.

28. Aguilar v. Texas, *supra* note 11, 378 U.. S. at 111, 84 S.Ct. at 1512, quoting Jones v. United States, *supra* note 11, 362 U.S. at 270, 80 S.Ct. 725.

29. United States v. Ventresca, *supra* note 11, 380 U.S. at 109, 85 S.Ct. at 746. See also Jones v. United States, *supra* note

11, 362 U.S. at 270, 80 S.Ct. 725; Johnson v. United States, *supra* note 11, 333 U.S. at 13–17, 68 S.Ct. 367; Hagan v. United States, 124 U.S.App.D.C. 276, 279, 364 F.2d 669, 672 (1966), cert. denied, 386 U.S. at 945, 87 S.Ct. 979, 17 L.Ed. 2d 875 (1967) ; Ford v. United States, 122 U.S.App.D.C. 259, 265, 352 F.2d 927, 933 (en banc 1965).

30. United States v. Ventresca, *supra* note 11, 380 U.S. at 109, 85 S.Ct. at 746. See also (Clarence) Jones v. United States, *supra* note 20, 122 U.S.App.D.C. at 371, 353 F.2d at 909.

31. There can be no inquiry as to whether Officer Fialkewicz had more information which he could have presented to the magistrate. "It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." Aguilar v. Texas, *supra* note 11, 378 U.S. at 109 n. 1, 84 S.Ct. at 1511 (emphasis in original). See also Whiteley v. Warden, *supra* note 22, 401 U.S. at 565 n. 8, 91 S.Ct. 1031; Spinelli v. United States, *supra* note 15, 393 U.S. at 413 n. 3, 89 S.Ct. 584, 21 L.Ed.2d 637 ; Giordenello v. United States, *supra* note 13, 357 U.S. at 486, 78 S.Ct. 1245, 2 L. Ed.2d 1503.

32. Spinelli v. United States, *supra* note 15, 393 U.S. at 414, 89 S.Ct. at 588, characterized an affiant's statement that the suspect was known to have been involved in illicit gambling as "but a bald and unilluminating assertion of suspicion

equally unelucidated claim that the informant's "information has proven to be reliable in the past." [33] Even if these statements are to be disregarded as surplusage, it is clear to us that Agent Fialkewicz' affidavit, standing alone, established the probable cause the Constitution requires.

We have already summarized the comprehensive allegations of the affidavit,[34] and we appendicize the affidavit in full. It suffices here to simply point out the several features of the affidavit we deem decisive on the probable cause issue. While initially the intelligence of the ongoing drug operation proceeded from the informant's mouth, the information he confided was corroborated in substantial degree by the agent's own observations prior to application for the warrant. The informant not only disclosed prior narcotics sales from a specified point but, very importantly, also described the *modus operandi*. The description included details as to the telephone number to be called, the persons to talk with, the placement and acceptance of orders for drugs, and the method by which delivery of the drugs would be accomplished. Perhaps the most significant single fact in this case is that the accuracy of each of these details was personally verified by the agent during the course of events transpiring.

The agent dialed the telephone number himself, after which a purchase of narcotics was arranged and consummated. The agent heard the informant ask for "Bobby," appellant's alleged companion in the operation, whether or not he heard the other side of the telephone conversation.[35] He also heard the informant place an order for 25 heroin capsules, and witnessed an exchange of 25 such capsules for money.[36] The circumstances left little or no room for doubting that the sale was made in consequence of the telephone call. A preliminary field test of one of the capsules indicated the presence of an opium derivative. The informant identified both appellant and Long from police photographs.

That, in substance, was the showing made in Agent Fialkewicz' affidavit. It was a showing that, with but a single exception, every fact asserted by the informant was subsequently corroborated, and every prediction he made came true. The one exception was that appellant was one of the participants in the illegal enterprise. As we have stated, it is unclear from the affidavit whether the agent heard the voice on the other end of the informant's telephone conversation,[37] and perhaps even more uncertain that the agent could in any event have identified it as the voice of appellant. Was, then, there enough appearing in the affidavit to meet constitutional preconditions to accepting the informant's hearsay assertion that appellant was a co-adventurer in the narcotics sale which the agent actually saw? We think there plainly was.

Desirably, the agent's affidavit would have spelled out factually the trustworthiness of the informant and the dependability of his information that appellant was a co-seller of narcotics with "Bobby" Long. That it omitted doing so did not, however, in the circumstances here, frustrate a magistrate's conclusion of reliability on both scores. Reliability

---

that is entitled to no weight in appraising the magistrate's decision." See also Nathanson v. United States, *supra* note 17, 290 U.S. at 46, 54 S.Ct. 11, 78 L.Ed. 159. But see United States v. Harris, *supra* note 14, 403 U.S. at 579, 580, 91 S.Ct. 2075, 29 L.Ed.2d 723, an opinion shared by three members of the court (police officer's knowledge of suspect's reputation).

33. Spinelli v. United States, *supra* note 15, 393 U.S. at 416, 89 S.Ct. 584.

34. Part I, *supra*.

35. See note 7, *supra*.

36. That was established beyond peradventure of a doubt by searches of the informant before and after the transaction and the absence of contact between the informant and other persons during the interim.

37. See note 7, *supra*.

may be shown in any one of several possible ways,[38] and "where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone."[39] The one qualification on this proposition is that "the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestee[] committed . . . or [was] in the process of committing the felony."[40]

Here that qualification was met. Not only were none of the informant's divulges impeached in the slightest by the agent's later observations, but those observations confirmed directly each of the several facets of the informant's story save only that appellant was a partner in the drug-peddling operation and more particularly in the transaction the agent watched. That confirmation, we think, provided ample basis for crediting both the reliability of the informant and the reliability of his assertion that appellant was culpably involved in the operation.

Our conclusion is buttressed by judicial decisions, including some of our own, on essentially the same question in factual situations not essentially different. In Draper v. United States,[41] an informant told a federal agent that Draper, the suspect, would return by train on one of two specified dates with an out-of-town purchase of heroin. The informant also gave a detailed description of Draper's physical appearance and the clothing he would be wearing on arrival. The agent met Draper's train and found that Draper matched the informant's description in every particular. Although the agent could not verify by observation that Draper was actually carrying narcotics, the Supreme Court held that Draper's arrest and an accompanying search were valid. "[S]urely," said the Court, "with every other bit of [the informant's] information being thus personally verified, [the agent] had 'reasonable grounds' to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him—was likewise true."[42]

Similarly, in (Anderson) Jones v. United States,[43] a police officer received a long distance telephone call from an informant of previously demonstrated reliability[44] that Jones had just bought a quantity of narcotics in New York City and was bringing it into the District of Columbia on a specified train. The officer knew that Jones was under investigation for suspected trafficking in narcotics and that twice before he had been convicted of narcotic violations. The officer watched Jones as he disembarked from the train previously identified, saw part of a paper bag protruding from his pocket, and then arrested and searched him. As we pointed out, "the officer then had verified every detail of the information given by the New York informant save one: whether in the bulging pocket, or elsewhere on his person, appellant had the predicted narcotics."[45] We sustained the arrest and search on the ground that the affiant "had reasonable grounds to believe that the only remaining unverified prediction, i. e., that appellant would have narcotics, was likewise probably true."[46]

38. See, e. g., Spinelli v. United States, supra note 15, 393 U.S. at 417, 89 S.Ct. 584.

39. Whiteley v. Warden, supra note 22, 401 U.S. at 567, 91 S.Ct. at 1036, 28 L.Ed. 2d 306 (citations omitted).

40. Id.

41. Supra note 2.

42. 358 U.S. at 313, 79 S.Ct. at 333, 3 L. Ed.2d 327.

43. 106 U.S.App.D.C. 228, 271 F.2d at 494 (1959).

44. It appeared without controversy that on many occasions over a five-year period, the informant had been found reliable. Id. at 229, 271 F.2d at 495.

45. Id. at 230, 271 F.2d at 496.

46. Id.

*Draper* and *Jones,* of course, involved warrantless arrests and searches, and addressed the reliability of particular items of the informant's information as distinguished from the latter's general trustworthiness. These two circumstances do not diminish the precedental, indeed controlling, force of those decisions in the case at bar. Certainly the Fourth Amendment imposes the probable cause requirement no less stringently in no-warrant than in warrant cases,[47] and just as surely the credibility of the informant himself may emerge in much the same fashion as the credibility of some aspect of his story.[48] That is apparent from our decision in (Clarence) Jones v. United States,[49] where information narcotics agents derived from personal observations did service for both. Told that Jones was selling narcotics from an apartment, the agents searched the informant, found that he had no narcotics, and gave him money with which to make a purchase from Jones. The agents watched the informant enter and later depart from the apartment, and then receive a quantity of narcotics from him. The informant said that he had bought the drugs from

Jones in the apartment, and he identified Jones from a police photograph. Treating an affidavit relating these events, we held that "the agents' observation of the informant entering [the apartment] without narcotics and emerging with narcotics in his possession and his identification of [Jones'] photograph provided bases for the agents to 'credit' the information that [Jones] was selling narcotics in the" apartment.[50] We added that "[w]hile it would have been preferable if the affidavit had also detailed the basis for the agents' conclusion that the informant had proven reliable in the past, its failure to do so does not preclude probable cause in light of the substantial 'crediting' circumstances."[51]

"The essence of the matter is the probability of truth, not the certainty."[52] That is the consideration reconciling the cases. For "[i]n dealing with probable cause, . . . we deal with probabilities;"[53] "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause."[54] By the same token, "the term 'probable cause' . . . means less than evidence which would justify condemnation,"[55] and "a finding of 'prob-

47. Whiteley v. Warden, *supra* note 22, 401 U.S. at 566, 91 S.Ct. 1031; United States v. Ventresca, *supra* note 11, 380 U.S. at 105–109, 85 S.Ct. 741, 13 L.Ed.2d 684; Aguilar v. Texas, *supra* note 11, 378 U.S. at 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723; Jones v. United States, *supra* note 11, 362 U.S. at 270–271, 80 S.Ct. 725, 4 L.Ed.2d 697.

48. The question whether the informant was reliable and reliably obtained his information is essentially similar whether the arrest was with or without a warrant. See, *e. g.,* Spinelli v. United States, *supra* note 15, 393 U.S. at 417 n. 5, 89 S.Ct. 584, 21 L.Ed.2d 637 (warrant); Beck v. Ohio, *supra* note 13, 379 U.S. at 96, 85 S.Ct. 223, 13 L.Ed.2d 14 (no warrant); (Clarence) Jones v. United States, *supra* note 20, 122 U.S.App.D.C. at 370, 353 F.2d at 908 (warrant); Jackson v. United States, 118 U.S.App.D.C. 341, 342, 336 F.2d 579, 580 (1964) (no warrant).

49. *Supra* note 30.

50. 122 U.S.App.D.C. at 371, 353 F.2d at 909.

51. 122 U.S.App.D.C. at 371, 353 F.2d at 909. And see, reaching the same conclusion in similar contexts, United States v. Harrison, 139 U.S.App.D.C. 266, 267, 432 F.2d 1328, 1329 (1970); Hagan v. United States, *supra* note 29, 124 U.S.App.D.C. at 277, 364 F.2d at 670; Ford v. United States, *supra* note 29, 122 U.S.App.D.C. at 260, 352 F.2d at 928.

52. (Anderson) Jones v. United States, *supra* note 43, 106 U.S.App.D.C. at 230–231, 271 F.2d at 496–497.

53. Brinegar v. United States, *supra* note 12, 338 U.S. at 175, 69 S.Ct. at 1310, 93 L.Ed. 1879. See also Draper v. United States, *supra* note 12, 358 U.S. at 313, 79 S.Ct. 329, 3 L.Ed.2d 327.

54. Spinelli v. United States, *supra* note 15, 393 U.S. at 419, 89 S.Ct. at 590.

55. United States v. Ventresca, *supra* note 11, 380 U.S. at 107, 85 S.Ct. at 745, quoting Locke v. United States, 11 U.S.

able cause' may rest upon evidence which is not legally competent in a criminal trial." [56]

We find, then, from the allegations of Agent Fialkewicz' affidavit the balance of probabilities favoring probable cause for appellant's arrest. Courts, no less than magistrates,[57] must avoid "interpreting the affidavit in a hypertechnical, rather than a commonsense manner." [58] It is not necessary "that each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint." [59] And "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial." [60] Critically for this case, it suffices that the informant's "report was of the sort which in common experience may be recognized as having been obtained in a reliable way. . . ." [61]

## IV

The foregoing analysis of the probable cause showing Agent Fialkewicz' affidavit made to the Commissioner sets the stage for consideration of the issue this appeal precisely poses. As defined by appellant's single complaint in the Dis-

trict Court and here, that issue is a narrow one, to be sharply differentiated from others not presented. Appellant's solitary claim is that the District Judge erred in refusing to allow defense counsel to examine the agent on his informant's pre-informing reliability. Appellant has not suggested that the agent's affidavit failed to adequately make out probable cause for the arrest warrant if the informant's information could properly be taken into account. He has not contended that the affidavit, unimpeached by extrinsic evidence, lacked on its face a satisfactory appearance of trustworthiness of the informant and of the information he gave. Nor has our appellant, as have others before him, called for divulgence of the identity of the informant.[62] Issues of constitutional dimension argued neither in the trial court nor here may sometimes summon our attention, but only when their resolution is imperatively required to avert a plain miscarriage of justice.[63] We find no such situation here, and so, we confine ourselves to the question as this appeal frames it.

 Despite a magistrate's affirmative finding, the facial sufficiency of an affidavit's allegations to establish probable cause may be attacked on review.[64] On the other hand, it is less

(7 Cranch) 339, 348, 3 L.Ed. 364 (1813). See also Jones v. United States, *supra* note 11, 362 U.S. at 270, 80 S.Ct. 725; Draper v. United States, *supra* note 12, 358 U.S. at 311–312, 79 S.Ct. 329; Brinegar v. United States, *supra* note 12, 338 U.S. at 173, 69 S.Ct. 1302.

56. United States v. Ventresca, *supra* note 11, 380 U.S. at 107, 85 S.Ct. at 745. See also Draper v. United States, *supra* note 12, 358 U.S. at 311, 79 S.Ct. 329.

57. See text *supra* at note 25.

58. United States v. Ventresca *supra* note 11, 380 U.S. at 109, 85 S.Ct. at 746. See also Spinelli v. United States, *supra* note 15, 393 U.S. at 415, 89 S.Ct. 584.

59. Jaben v. United States, *supra* note 14, 381 U.S. at 224, 85 S.Ct. at 1371, 14 L.Ed.2d 345.

60. Spinelli v. United States, *supra* note 15, 393 U.S. at 419, 89 S.Ct. at 590.

61. *Id.* at 417–418, 89 S.Ct. at 390.

62. See McCray v. Illinois, *supra* note 20, 386 U.S. at 303, 87 S.Ct. 1056, 18 L.Ed. 2d 62; Rugendorf v. United States, *supra* note 14, 376 U.S. at 534, 84 S.Ct. 825, 11 L.Ed.2d 887; Roviaro v. United States, 353 U.S. 53, 58, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Smith v. United States, 123 U.S.App.D.C. 202, 206, 358 F.2d 833, 837 (1966), cert. denied, 386 U.S. 1008, 87 S.Ct. 1350, 18 L.Ed.2d 448 (1967).

63. See, *e. g.*, Bush v. Texas, 372 U.S. 586, 590, 83 S.Ct. 922, 9 L.Ed.2d 958 (1963); United States v. Petrillo, 332 U.S. 1, 12, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947); Rescue Army v. Municipal Court, 331 U.S. 549, 568, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); Asbury Hosp. v. Cass County, 326 U.S. 207, 213–214, 66 S.Ct. 61, 90 L.Ed. 6 (1945).

64. See cases cited *supra* notes 26–30.

clear that the veracity of the allegations may be explored.[65] The Supreme Court seems to have left the matter open[66] and other courts, both federal and state, are divided.[67] Our own decisions are inconclusive.[68] For reasons now to be discussed, however, we need not undertake resolution of the problem.

■ At no time has appellant advanced any particular reason for quizzing the officer-affiant as to the reliability of the informant or the information he supplied other than a desire to assay those qualities. As counsel explained to the trial judge, "[t]he only way my defendant is connected with this [transaction] is through the word of this informant and I think we have a right to test the reliability of this informant. . . ."[69] We commend counsel's endeavor to afford his client a maximum of protection and, like counsel, we realize that reliability is the bridge to probable

cause as to appellant. We think, however, that countervailing considerations deny an automatic right such as counsel insisted upon.

In United States v. Halsey,[70] where similarly the accused argued that his bare "denial * * * was sufficient to make 'a factual issue' for the hearing on every assertion" in an affidavit,[71] Judge Frankel disagreed:

> Viewing the problem in the broad terms of defendant's submission, we reject the contention. This is not to say that there may never be occasions for trying out the truth of an affidavit on which a search warrant issues. It is only to say that there is no justification for allowing such a *de novo* trial of the issuing magistrate's determination as a routine step in every case. Until or unless the defendant has at least made some initial showing of some potential infirmities he pro-

65. We recognize that Fed.R.Crim.P. 41 (e) authorizes a motion to suppress seized evidence "on the ground that . . . there was not probable cause for believing the existence of the grounds on which the warrant was issued . . .," and provides that "[t]he judge shall receive evidence on any issue of fact necessary to the decision of the motion." This is not, however, a license to probe at will. An evidentiary exploration is not required as a matter of course, but only upon factual allegations which, if established, would warrant relief. United States v. Culotta, 413 F.2d 1343, 1345 (2d Cir. 1969), cert. denied, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970); United States v. One 1965 Buick, 392 F.2d 672, 678 (6th Cir. 1968); Cohen v. United States, 378 F.2d 751, 760 (9th Cir.), cert. denied, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). And allegations which are merely conclusory or conjectural do not suffice for the purpose. United States v. One 1965 Buick, *supra*; Cohen v. United States, *supra*.

66. See Rugendorf v. United States, *supra* note 14, 376 U.S. at 531–533, 84 S.Ct. 825. Compare Jones v. United States, *supra* note 11, 362 U.S. at 267–271, 80 S.Ct. 725.

67. See cases collected in Note, Testing the Factual Basis of a Search Warrant,

67 Colum.L.Rev. 1529, 1530–1531 ns. 11–18 (1967).

68. In Kenney v. United States, 81 U.S. App.D.C. 259, 157 F.2d 442 (1946), this court upheld a refusal to allow inquiry into the truthfulness of an affidavit upon which an arrest warrant was based. As reason therefor, the opinion states merely that "[i]t is sufficient that the affidavit showed probable cause at the time the warrant was issued." *Id.* If that is a holding that such probe could under no circumstances be made, it would seem to be eroded by the Supreme Court's later decisions in Jones v. United States, *supra* note 11, 362 U.S. at 267–271, 80 S.Ct. 725, and Rugendorf v. United States, *supra* note 14, 376 U.S. at 531–533, 84 S.Ct. 825. See text *supra* at note 66. And see Walker v. United States, 117 U.S.App.D.C. 151, 154–155, 327 F.2d 597, 600–601 (1963–64) (statement dissenting from denial of rehearing *en banc*).

69. Counsel stressed additionally the importance of "this defendant being able to ascertain as much information about the reliability of this informant as the rules and the Court will permit him under these circumstances."

70. 257 F.Supp. 1002 (S.D.N.Y.1966).

71. *Id.* at 1004.

poses to demonstrate, the magistrate's acceptance of the affidavit as truthful should be enough.[72]

Indubitably, as the court stated, "when the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing."[73] "[S]o, if there were nothing more to consider, it would follow that the veracity of a supporting affidavit could always be tried on a motion to suppress."[74] On the other hand, as Judge Frankel admonished, there "is the question of appropriately dividing power and responsibility between the magistrate issuing a warrant and the judge later considering its legality"[75]—"if the weight and independence of the issuing magistrate's judgment is to be duly respected, and appropriately fostered, there is in this alone substantial grounds for denying the claim that a district judge should routinely, whenever it is merely asked, try the question *de novo.*"[76] There is, too, "the necessity—rarely controlling, but rarely immaterial—that criminal charges be reached on their merits and resolved with a decent measure of expedition."[77] Thus, upon "an estimate of the supposed benefits in routine trials of search warrants when considered with (a) the burdens this procedure entails and (b) the risks posed by warrants issued on perjured affidavit,"[78] and upon "a reasonable balance between prudence and the ideal,"[79] the court rejected "[the] bland and sweeping claim [of] the right to try the affiant in every case, with no foundation beyond the hope that some inaccuracy or falsehood may emerge."[80] The court admonished, however, that "[t]he problem may be quite different where some initial showing of some sort—some suggestion of a basis or area of doubt—is tendered."[81]

The *Halsey* position appears to be the rule in the Second Circuit.[82] In a similar situation, Judge Friendly, speaking for a unanimous court, further elucidated:

Once the legal sufficiency of the affidavit is recognized, appellant's position necessarily becomes that, even so, a defendant is entitled to a hearing where he can probe whether the averred statements were in fact made to the affiant and whether the instances adduced to prove reliability were significant enough to justify the conclusion. We have intimated that circumstances might arise where a hearing with respect to the truth of a legally sufficient affidavit should be granted. [Citations omitted]. But, for reasons well indicated by Judge Frankel in United States v. Halsey [citation omitted], that should be done only when there has been an initial showing of falsehood or other imposition on the magistrate. The inter-

72. *Id.* at 1005.

73. *Id.* (emphasis in original.)

74. *Id.*

75. *Id.*

76. *Id.* at 1006.

77. *Id.* at 1005. "On a less lofty but eminently practical level, there is the fact that the work must be divided and get done. If the pressure of time and physical limitations did not exist, we might want to check on everybody's judgment; we might, for example, make a preliminary test of every indictment to be sure the grand jury had something to go on. But the mortality of men, among other things, counsels against that. * * * So, too, with the notion that a trial of every search warrant should be a matter of automatic right." *Id.* at 1006 (citation omitted).

78. *Id.* at 1005.

79. *Id.* at 1006.

80. *Id.*

81. *Id.*

82. See United States v. Dunnings, 425 F.2d 836, 839–840 (2d Cir. 1969), cert. denied, 397 U.S. 1002, 90 S.Ct. 1149, 25 L.Ed.2d 412 (1970). See also United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967); United States v. Averell, 296 F.Supp. 1004, 1016 (E.D.N.Y.1969); United States v. Roth, 285 F.Supp. 364, 366–367 (S.D.N.Y.1968); United States v. Suarez, 380 F.2d 713, 715–716 (2d Cir. 1967).

position of an "independent judicial officer, whose decision, not that of the police, [will] govern whether liberty or privacy is to be invaded," Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960), goes a long way toward accomplishing the objectives of the Fourth Amendment. True, the objectives are not accomplished if the judicial officer is put upon by the police. But it is the responsibility of such officers, particularly in light of their new dignity as United States magistrates and the requirements for their membership in the bar and periodic training, 28 U.S.C. §§ 631(b) and 637, to see to it that they are not deceived. The exclusionary rule, as applied in Fourth Amendment cases, is a blunt instrument, conferring an altogether disproportionate reward not so much in the interest of the defendant as in that of society at large. If a choice must be made between a rule requiring a hearing on the truth of the affidavit in every case even though no ground for suspicion has been suggested and another which takes care of the overwhelming bulk of the cases, the policies of the Fourth Amendment will be adequately served by the latter even though a rare false affidavit may occasionally slip by.[83]

Not only do we find these reasons appealing, but we also find still another reason for upholding the trial judge's ruling in this case. Appellant did not question the veracity of Agent Fialkewicz, the affiant; there never has been an issue as to whether the agent stated truthfully what he set forth in his affidavit, including what the informant had told him. Instead, appellant challenged the general reliability of the informant, and that, in the circumstances appearing here, was a factor unnecessary to decision of whether the magistrate's determination of probable cause should stand or fall. Here the allegation of the informant's past reliability was not given the necessary factual[84] support, but the affidavit's specifications of the agent-affiant's own observations, as corroborating circumstances, authorized acceptance of the informant and his version as trustworthy.[85] Put another way, the agent's personal experiences in the affair, which he detailed in the affidavit, provided a firm enough ground for crediting the hearsay statement that appellant was a participant with Long in the drug enterprise.[86] So, with reliability as to the particular incident precipitating the warrant—the sale the officer witnessed—the informant's reliability on previous occasions was immaterial.

Appellant relies on Jackson v. United States[87] where, on a motion to suppress narcotics seized from a suspect upon his warrantless arrest, the trial court refused to permit interrogation of the arresting officer as to the reliability of the informant whose report to the officer had led to the arrest. That we held to be error.[88] And in Perry v. United States,[89] in a similar situation, we reached the same conclusion.[90] These holdings, however, in our view, are inapposite here. Arrest upon a warrant is necessarily preceded by a finding of probable cause by a magistrate—a judicial officer—but an arrest without a warrant is made without a judicial determination on that score. Surely at some point the arrestee is entitled to such a determination, and the Criminal Rules provide just such an opportunity.[91]

83. United States v. Dunnings, *supra* note 82, 425 F.2d at 839–840.

84. See text *supra* at note 33.

85. See Part III, *supra*.

86. Compare Jones v. United States, *supra* note 11, 362 U.S. at 271, 80 S.Ct. 725; Walker v. United States, *supra* note 68, 117 U.S.App.D.C. at 153, 327 F.2d at 599.

87. *Supra* note 48.

88. 118 U.S.App.D.C. at 342, 336 F.2d at 580.

89. 118 U.S.App.D.C. 360, 336 F.2d 748 (1964).

90. *Id.* at 362, 336 F.2d at 750.

91. Fed.R.Crim.P. 41(e).

And "the court, in determining probable cause, like the magistrate issuing a warrant, must be informed of the underlying circumstances from which the officers concluded that the informant was credible or his information reliable." [92] Moreover, neither in *Jackson* nor in *Perry* was the informant's tale adequately corroborated.[93] On the other hand, in the case at bar Agent Fialkewicz' uncontroverted observations so far surrounded his informant's information with an aura of dependability as to render the inquiry appellant sought irrelevant.[94]

The judgment of appellant's conviction is

Affirmed.

### APPENDIX

### AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

On June 21, 1967, affiants Gary G. Worden, and Walter S. Fialkewicz received information from a confidential source, whose information has proven to be reliable in the past, that ROBERT D. LONG @ BOBBY, identified by MPD photograph number 153–262, and CHARLES J. THORNTON @ BOO, identified by MPD photograph number 176–961, were selling narcotic drugs from room number 8 of 3008 13th Street, N.W., Washington, D. C.; that the person wanting the drugs would call telephone number 332–1845, which is listed to WILLIE M. WILLIAMS, 3008 13th Street, N.W., Room Number 8, Washington, D. C., and talk to either BOBBY (ROBERT LONG) or BOO (CHARLES THORNTON) and tell them how much "stuff" (narcotics) they wanted; that BOBBY or BOO would then tell the person where to wait; and that they (either LONG or THORNTON) would deliver the narcotics to the person on the street.

On June 21, 1967, affiant Fialkewicz met with the confidential source. The confidential source was searched by affiant Fialkewicz and found to be free of any money or narcotic drugs. Affiant Fialkewicz furnished the confidential source with a quantity of Official Advance Funds, with which to purchase a quantity of narcotic drugs from ROBERT LONG or CHARLES THORNTON.

Affiant Fialkewicz and the confidential source went to a public telephone and affiant Fialkewicz dialed the number 332–1845. The affiant, when someone answered, handed the phone to the confidential source. The affiant then heard the confidential source ask for BOBBY (Long). The person on the other end stated that BOBBY was out; that this was BOO. BOO (THORNTON) then asked the confidential source what he wanted. The confidential source told BOO (THORNTON) that it wanted to pick up twenty-five "things" (meaning capsules of heroin). BOO (THORNTON) told the confidential source to go to 13th & Irving Streets, N.W. and wait and that BOBBY (LONG) would meet him in a few minutes. The confidential source then hung up the telephone.

The confidential source then walked, under the surveillance of affiant Fialkewicz to the corner of 13th & Irving Streets, N.W. and waited. The confidential source did not meet anyone or speak to anyone enroute to this location.

A short time later, the affiants observed a Negro male, subsequently identified as ROBERT LONG @ BOBBY exit the building at 3008 13th Street, N. W., and walk to the corner of 13th &

---

92. Jackson v. United States, *supra* note 48, 118 U.S.App.D.C. at 342, 336 F.2d at 580.

93. In *Perry*, such corroboration as appeared was held to be insufficient. 118 U.S. App.D.C. at 362, 336 F.2d at 750. In *Jackson*, there apparently was no corroboration at all. Compare Smith v. United States, *supra* note 62, 123 U.S.App.D.C. at 204, 358 F.2d at 835, and Walker v. United States, *supra* note 68, 117 U.S. App.D.C. at 152, 327 F.2d at 598, in each of which the corroboration was held to be adequate.

94. See Part III, *supra*.

Irving Streets, N.W., and meet with the confidential source. The confidential source and LONG stood together for a short time and it appeared that the two exchanged something between their hands. ROBERT LONG then left the confidential source and returned to 3008 13th Street, N.W. and entered. The confidential source then walked east on Irving St., N.W. to where affiant Fialkewicz picked him up in the government vehicle.

Affiant Worden joined affiant Fialkewicz and the confidential source and the confidential source surrendered to affiant Worden (25) gelatin capsules containing a white powder, suspected heroin. The confidential source told the affiants that it had purchased the capsules from BOBBY (LONG) with the $25.00 Official Advance Funds furnished to it by Affiant Fialkewicz. The confidential source was again searched by affiant Fialkewicz for any money or narcotic drugs, with negative results.

At the Washington Field Office, Bureau of Narcotics, affiant Worden performed a preliminary field test on a portion of the white powder from one of the capsules and received a positive color reaction, indicating the presence of an opium derivative.

The confidential source positively identifies ROBERT D. LONG @ BOBBY from MPD photograph number 153–262 and CHARLES J. THORNTON @ BOO from MPD photograph number 176–961. ROBERT LONG and CHARLES THORNTON are both well known to the affiants as being involved in the illicit narcotic traffic in this area. They are both also well known by members of the MPD Narcotic Squad.

Because of the information received from the confidential source and of the observation relative to the purchase of evidence from ROBERT LONG on June 21, 1967, it is requested by the affiants that an arrest warrant be issued for ROBERT D. LONG and CHARLES JOSEPH THORNTON @

BOO for violation of 26 USC 4704(a) and 26 USC 4705(a). Because of the above, it is also the affiants belief that illicit narcotic drugs are being sold from the aforementioned premises and that there is now a quantity of illicit narcotic drugs and narcotic parahernalia [sic] at 3008 13th Street, N.W., Room Number 8, Washington, D.C. LONG has previously been convicted in District Court, Wash DC on 3/20/59 for Violation of Federal Narcotic Laws and was sentenced to 5 years imprisonment.

THORNTON on 1/6/61 was sentenced to 8 to 9 years in prison in US District Court, Wash., D.C. by Judge Joseph Jackson, for violation of the Federal Narcotic Laws.

/s/ Narcotic Agent
Walter S. Fialkewicz

Subscribed and sworn to before me this 23 day of June, 1967:

Comm.'s Docket
26

/s/ Sam Wertleb
Case 403 . U. S. Commissioner