**UNITED STATES of America, Plaintiff,**

v.

**Karl Victor MARKAN, Jr., Defendant.**

**No. CR 71-810.**

United States District Court,
N. D. Ohio, E. D.

Nov. 10, 1972.

John Berena, Asst. U. S. Atty., Cleveland, Ohio, for plaintiff.

Peter Onysko, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

LAMBROS, District Judge.

Defendant is charged with possession of a sawed off shotgun in violation of 26 U.S.C. §§ 5861(b) and 5871. He has moved for suppression of the gun in question on the ground that the search violated his rights against search and seizure under the Fourth Amendment to the United States Constitution.

The motion to suppress challenged police actions with respect to two search warrants for defendant's premises. At the hearing on the motion, the Court ruled that the police actions subsequent to obtaining the first search warrant on October 24, 1972, did not violate defendant's Fourth Amendment rights in and of themselves. However, the Court further determined that the gun in question was obtained as a result or was a "fruit" of the first warrant and therefore must be suppressed if the first warrant was found to be invalid for lack of probable cause. Wong Sun v. United State, 371 U.S. 471, 485–487, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961).

The crucial question presented by the motion to suppress is, therefore, whether the sworn statements in support of the first search warrant are sufficient to establish probable cause for the issuance of a search warrant for a stolen 1965 Chevrolet on defendant's premises. For the reasons stated below, the Court finds that the sworn statements did not establish the requisite probable cause.

## I. TESTIMONY PRESENTED AT SUPPRESSION HEARING

On October 24, 1971, the Seven Hills Police arrested Gary Gabbard for riding a motorcycle without a license. They found an automobile vehicle inspection number ("vin") tag and certificate of title in his possession. After an investi-

gation, they determined that the tag and title belonged to a blue 1965 Chevrolet which had been reported stolen.

Later the same day, Patrolman Rusnov advised Patrolman Lancaster of the Seven Hills Police Department of the items obtained from Gabbard. In addition, Rusnov told Lancaster that he had personally observed a turquoise Chevrolet on defendant's premises several nights before. Rusnov also related to Lancaster that an informant had told him (Rusnov) that he (the informant) had recently seen stolen automobiles on defendant's premises.

As a result of this conversation, Lancaster contacted the informant who stated to Lancaster that he (the informant) had seen a 1960 to 1965 Chevrolet on defendant's premises three or four days earlier. Lancaster then conferred with his supervisor, Sergeant Redish, who directed Lancaster to obtain a search warrant for defendant's premises.

Lancaster and several other officers wrote an affidavit later that day with the telephone assistance of a county prosecutor.[1] Lancaster waited several hours for the Parma Municipal Court Judge to return from a football game.

Although Lancaster testified at the suppression hearing that he had a discussion with the Judge, he did not recall the content of that conversation. The Judge signed the search warrant authorizing a search for a blue 1965 Chevrolet sedan.[2]

That evening, the police searched the defendant's property and found no 1965 Chevrolet. However, they observed an open box in the corner of the garage with the words "property of Ohio Bell" printed on the box. The police seized the box and the tools therein.

The box and its contents were shown to a security employee of Ohio Bell Telephone Company who stated that the equipment was Ohio Bell property and that he believed the property was a portion of that recently stolen from a repairman's truck. This information was incorporated into an affidavit requesting a second search warrant for the remaining telephone equipment in defendant's house. The Judge signed the second warrant on October 26, 1971.

In a search of defendant's house the same day, the police observed the gun in question hanging on the wall of a bedroom in defendant's house and seized it.

---

1. The affidavit, which was signed by Lancaster, provides:

Patrolman Richard Lancaster who being duly sworn according to law, deposes and says that on or about the 24 day of October 1971, at the County of Cuyahoga, one Karl Markan Jr. had and still has in his possession, the following personal property for which search authorization and seizure is sought, to-wit: Possession of a 1965 Chevrolet Four-Door Sedan knowing it to have been stolen, knowing the same to be a violation of Ohio Revised Code 4549.04 and that said complainant believes and has good cause to believe that said property, or some part thereof, is concealed in multiple garage and out buildings at the rear of the residence located at 18822 State Rd., North Royalton, Ohio.

Complainant further avers the facts upon which such belief is based are: a stolen vin number tag and stolen certificate of title in possession of one Gary Gabard, known in the past to be in the company of Karl Markan, Jr., at the residence of 18822 State Rd. where a reliable informer who has given information which led to arrest and indictment in the past states that he has been at the residence of 18822 State Rd., North Royalton, Ohio within the past week and further states that in the buildings at the rear of the property stolen autos have been concealed and worked on.

2. The search warrant provides in relevant part:

Patrolman Richard Lancaster who being duly sworn according to law, deposes and says that on or about the 24th day of October 1971, at the County of Cuyahoga, one Karl Markan, Jr. had and still has in his possession, the following personal property for which search authorization and seizure is sought, to-wit: a 1965 Chevrolet four door sedan Vin Number 136695B150507 knowing the same to have been stolen in violation of Ohio Revised Code 4549.04.

## II. PRINCIPLES OF PROBABLE CAUSE

■■ A search warrant issued for a private dwelling must be based on a neutral magistrate's determination from sworn statements of probable cause to believe there is criminal activity on the premises. Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Coury v. United States, 426 F.2d 1354 (6th Cir. 1970). The required probability of criminal activity is less stringent than a *prima facie* showing and more stringent than suspicion or belief. Spinelli v. United States, 393 U.S. 410, 415–419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Davis, 346 F.Supp. 435, 440 (S.D.Ill.1972).

Mindful of the importance of preventing later fabrication of probable cause and a vitiation of the requirement of the neutral magistrate, the courts have placed restrictions on what may be considered by the reviewing court in examining the magistrate's finding of probable cause. For example, in making the determination that the informant and his conclusions were validly found to be reliable, the reviewing court should examine only the evidence which was presented to the magistrate. United States v. Bailey, 458 F.2d 408 (9th Cir. 1972); United States v. Davis, 402 F.2d 171, 173 (7th Cir. 1968). Obviously, the reviewing court should not speculate that as to the content of conversations with the magistrate concerning additional facts not in the affidavit or record.

■ In addition, where the information given to the magistrate is not within the personal knowledge of the affiant, the magistrate may consider the information only when the underlying circumstances are described in sufficient detail to permit the magistrate to make an independent determination that, first, the informant is reliable and, second, the informant's conclusion as to the illegal

activity is valid. Aguilar v. Texas, 378 U.S. 108, 112, 113, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1965); Spinelli v. United States, 393 U.S. 410, 412, 413, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Harris, 403 U.S. 573, 576, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Thornton, 147 U.S. App.D.C. 114, 454 F.2d 957 (1971).

Apart from these specific restrictions, the reviewing courts have generally walked a narrow line between protecting the accused's rights to privacy and avoiding a highly technical reading of the affidavit. In general, the courts have treated an affidavit more leniently if it was drafted under emergency conditions by a policeman who had no opportunity to consult with a prosecutor. In United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), the Court issued the following warning:

> "If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. *They are normally drafted by nonlawyers in the midst and haste of a criminal investigation.*" *See also* Coury v. United States, 426 F.2d 1354 (6th Cir. 1970). (Emphasis added.)

## III. APPLICATION OF LAW TO FACTS

■ Following the principles discussed above, this Court must review the finding of probable cause in this case on the basis of statements presented to the municipal court judge. In this case, the only sworn statements and, in fact, the only statements which were presented to the judge are contained in the affidavit signed by Lancaster.[3]

---

3. Lancaster testified that there was a conversation with the judge prior to his signing. However, he could not remember what, if any, specific facts were discussed and did not testify that he made sworn statements, in addition to the affidavit.

The affidavit itself makes only the following statements to justify a search for a 1965 Chevrolet:

1. A stolen vin number tag and stolen certificate of title were found in the possession of Gary Gabbard.

2. Gary Gabbard was "known in the past to be in the company of" the defendant at defendant's residence.

3. An informer (who had given information in the past leading to indictment) had been at defendant's residence during the past week. The informant "further" stated that stolen automobiles had been "concealed and worked on" in the building at the rear of defendant's premises.

■■ Applying *Aguilar* and *Spinelli* to the statements of the affidavit, the Court finds that the magistrate could not have properly considered two of these statements. First, the statement that Gabbard was "known" to have been in the company of the defendant is hearsay for which no source is identified and for which no underlying circumstances supportive of the conclusion are alleged. As such, it comes clearly within the ambit of *Spinelli* and *Aguilar* and cannot be considered by the Court. Second, the statement by the informant that the automobiles seen on the premises were "stolen" constitutes a conclusion with no facts to indicate how the informant reached the conclusion that the automobiles were, in fact, stolen and must, therefore, fall under the *Aguilar* holding.

■ Without these two statements the Court is left with an affidavit reciting merely that the stolen tag and certificate were found in Gabbard's possession and that an informant who had been at defendant's residence stated that cars were concealed and worked on in the buildings at the rear of that residence. Such information is clearly inadequate to support a search warrant for a 1965 Chevrolet or indeed to indicate a likelihood of any criminal activity on the premises either in the past or present.

Assuming for purposes of argument, however, that the two statements in question could properly have been considered, the affidavit would still be insufficient to support a finding of probable cause. In its broadest reading, the affidavit states only that the defendant's premises have been used in the past to house stolen cars and that a friend of defendant had possessed a stolen tag and title. There is nothing in the affidavit to connect the stolen tag and title or the defendant's premises with the 1965 Chevrolet for which the search was authorized. Should the Court permit such affidavits to support a search warrant, it would, in effect, be authorizing search warrants to be issued for all those persons who have harbored stolen cars in the past or who have associated with those found possessing articles of stolen vehicles.

Finally, the Court finds that the admonition against a technical reading of affidavits in *Ventresca* does not change its ruling on the invalidity of the warrant. First, even a broad reading of the affidavit does not provide the probable cause necessary to uphold the warrant. Second, the emergency situation to which *Ventresca* applies was not a factor in this case. The police officers had several hours within which to incorporate all the facts known into the affidavit. Furthermore, they consulted a prosecutor by phone who should have advised them of the need to incorporate facts upon which the magistrate could have found probable cause.

## IV. CONCLUSION

In making its ruling in this case, the Court is mindful that its decision may result in the suppression of evidence necessary to the conviction of defendant. However, it is also mindful of the abuses of personal liberty which might result if the constitutional requirements of probable cause are not enforced through the suppression of evidence gained through illegal warrants.

Those including in the Fourth Amendment the requirement of a warrant supported by sworn statements and a finding of probable cause were aware of the invasions of privacy which occurred when the discretion was placed with law enforcement officials. Justice Jackson, in a case where the officers had sufficient evidence at the time of search but failed to supply it to the magistrate, pointed out:

"The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers." Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 369, 92 L.Ed. 421 (1947).

The situation presented in this case is that, although there was time to do so, the police did not insert into the affidavit or attached statements the facts which they related at the suppression hearing. Furthermore, the issuing judge did not demand that more facts be presented. The disheartening result is that the enforcement of a vital federal criminal law has been frustrated by these omissions.

 The search warrant is a valuable investigative tool. It promotes effective law enforcement and serves to protect society from the ravages of crime. Its misuse, however, is intolerable and has historically been condemned by Americans. The application for and issuance of search warrants should not be treated as a routine and perfunctory administrative detail but should be viewed as a grave constitutional responsibility. The police, for their part, should not confine their affidavits to the limits of the legal forms but should attach additional affidavits to outline the facts in some detail.[4] Furthermore, the magistrate should demand more facts if necessary, should set forth a record of facts recited under oath in addition to the affidavit and should enter his findings of fact on a docket sheet, thus making available a record for any reviewing tribunal testing the validity of the warrant.

In this case, none of these practices were followed. The Court finds that the magistrate did not have sufficient facts before him to have found the requisite probable cause. It, therefore, declares the search warrant issued on October 24, 1971, invalid and orders suppressed the gun found as a "fruit" of that warrant.

It is so ordered.

---

4. There was an indication from the testimony at the suppression hearing that the officers shortened their statement to fit within the space provided on the form.